JONES, JUDGE:
The Appellant, C.J., appeals from two orders entered by the Pike Family Court; the first order terminated C.J.'s parental rights to her biological child, K.J., and the second order allowed the Appellees, M.S. and J.S, to adopt K.J.[1]
After timely filing a notice of appeal, C.J.'s court-appointed counsel submitted an Anders[2] brief on C.J.'s behalf. See A.C. v. Cabinet for Health and Family Serv. , 362 S.W.3d 361, 364 (Ky. App. 2012). In the Anders brief, counsel asserted that no meritorious issues exist on which to base an appeal. Nonetheless, counsel pointed out that it is incumbent upon this Court to independently review the record to decide whether the appeal is frivolous.[3] Id. Following receipt of the Anders brief we advised C.J. of her right to continue this appeal pro se and gave her additional time to file a brief of her own choosing. C.J. did not respond.
Accordingly, we have independently reviewed the record for the purpose of ascertaining whether the appeal is, in fact, void of nonfrivolous grounds for reversal. Id. at 372. After having done so, we agree with counsel's assessment. On the face of the record, we can perceive no basis warranting *495 relief on appeal. The Pike Family's Court's orders of termination and adoption are affirmed.
I. BACKGROUND
In May of 2013, C.J. ("Biological Mother") gave birth to K.J. ("Child"). Child resided with Biological Mother for a little over a year following her birth. Child began living with M.S. and J.S., a married couple (hereinafter referred to collectively as "Adoptive Parents") in or about October of 2014. Child has resided with and been cared for by Adoptive Parents since that time.
Over the years, there have been periods when Child did not have contact with Biological Mother. At some point, however, a visitation schedule was put in place through the Cabinet for Health and Family Services ("Cabinet"). The schedule allows Biological Mother to have monthly two-hour supervised visitation with Child. In the six months preceding the adoption hearing, Biological Mother, who is unable to transport herself, missed two of her monthly visits because transportation was not arranged for her. With the exception of her monthly visitation, Biological Mother is not involved in Child's life.
On August 1, 2016, the Pike Family Court awarded Adoptive Parents permanent custody of Child, finding that Adoptive Parents were Child's de facto custodians. A little over a year later, Adoptive Parents filed a dual petition with the Pike Family Court seeking to terminate the rights of Child's biological parents and leave to adopt Child.[4] In an investigative report, filed of record, the Cabinet concluded that Child was eligible for adoption, Adoptive Parents were morally fit and financially able to care and provide for Child and that adoption was in Child's best interests. After receipt of the report, the family court conducted a hearing. Biological Mother refused to consent to Child's adoption and participated in the hearing with the assistance of her court-appointed counsel.
Adoptive Parents presented proof that they have cared for Child since October of 2014 when she came to live with them. They have provided all of Child's food, clothing, shelter, medical care, and education with no assistance from Biological Mother. They have their own home where Child lives with them. They are employed and have the means to continue caring for Child. Child views Adoptive Parents as her family. She is thriving in their care, and they want to raise Child as their own.
Biological Mother testified that she is currently unable to care for Child and does not know that she will ever be in a position to do so. She is currently being treated for serious mental illnesses, including schizophrenia, bi-polar disorder, and depression. Biological Mother has suffered from these mental illnesses for at least the last sixteen years, and for the last five years she has resided at the Golden Years Rest Home because she is unable to care for herself. Biological Mother does not know when, if ever, she will be able to live independently. Biological Mother receives approximately thirty dollars per month; she uses this money to buy coffee and cigarettes for herself. She admitted that she does not support Child and has not purchased even small gifts, food, or clothing for Child since Child has been in the care of Adoptive Parents. Other than the monthly supervised visits, Biological Mother does not see or talk to Child.
*496 Following the final evidentiary hearing, the family court entered simultaneous, separate orders terminating Biological Mother's parental rights and granting Adoptive Parent's petition to adopt Child. This appeal followed.
II. STANDARD OF REVIEW
This case involves an adoption. A family court shall enter a judgment of adoption if after a hearing, the court is satisfied that:
the facts stated in the petition were established; that all legal requirements, including jurisdiction, relating to the adoption have been complied with; that the petitioners are of good moral character, of reputable standing in the community and of ability to properly maintain and educate the child; and that the best interest of the child will be promoted by the adoption and that the child is suitable for adoption.
KRS[5] 199.520(1). "Upon granting an adoption, all legal relationship between the adopted child and the biological parents shall be terminated except the relationship of a biological parent who is the spouse of an adoptive parent." KRS 199.520(2). Adoptions can be granted with or without the consent of the biological parents. KRS 199.500. If the adoption is sought without consent, KRS 199.502(1) requires proof as part of the adoption proceedings that one of the conditions set forth in subjections (a)-(j) exists with respect to the child at issue. See KRS 199.502(1).
"An adoption without the consent of a living biological parent is, in effect, a proceeding to terminate that parent's parental rights." B.L. v. J.S. , 434 S.W.3d 61, 65 (Ky. App. 2014) (citing Moore v. Asente , 110 S.W.3d 336 (Ky. 2003) ). Accordingly, in adoption without consent cases we apply the same standard of review that governs parental termination cases. Our review is confined to the clearly erroneous standard in CR[6] 52.01 based upon clear and convincing evidence. The family court's findings will not be disturbed unless there exists no substantial evidence in the record to support them. See M.P.S. v. Cabinet for Human Resources , 979 S.W.2d 114, 116 (Ky. App. 1998) (citing V.S. v. Commonwealth, Cabinet for Human Resources , 706 S.W.2d 420, 424 (Ky. App. 1986) ).
Clear and convincing proof does not necessarily mean uncontradicted proof; but rather, requires there is proof of a probative and substantial nature that is sufficient to convince ordinarily prudent minded people. Id. at 117. Under this standard, "we are required to give considerable deference to the [family] court's findings, and we will not disturb those findings" unless the record provides no substantial support for them. K.R.L. v. P.A.C. 210 S.W.3d 183, 187 (Ky. App. 2006). "Additionally, since adoption is a statutory right which severs forever the parental relationship, Kentucky courts have required strict compliance with the procedures provided in order to protect the rights of the natural parents." B.L. , 434 S.W.3d at 65.
III. ANALYSIS
A. Adoption Petition versus Petition for Termination of Parental Rights
Adoptive Parents filed a dual petition seeking both termination of Child's biological parents' rights and adoption. Nevertheless, before both the family court and this Court, the parties have characterized this action primarily as one predicated on the termination of parental rights. To this end, *497 they cite to and rely on the termination of parental rights statute, KRS 625.090. To prevent further confusion in this case and future adoption cases, it is incumbent on us to clarify that this is not a termination case governed by KRS Chapter 625; it is an adoption case governed by KRS Chapter 199.
If granted, the adoption itself terminates the parental rights of the biological parents. KRS 199.520(2). As in the present case, when two judgments have been unnecessarily entered in an adoption case, we view the " 'judgment of adoption' and 'order terminating parental rights' as being one document that comprises the judgment." Wright v. Howard , 711 S.W.2d 492, 494 (Ky. App. 1986). The effect of the judgment is the adoption of the child at issue. As such, we review the judgment for compliance with the adoption statutes.
It is a logical, of course, to ask why the labels matter if the end result is the same. The labels matter because the parties, style, manner of service, and jurisdictional prerequisites for an adoption petition are different than a petition seeking termination of parental rights. Before the family court can grant an adoption it must determine that "all legal requirements, including jurisdiction, relating to the adoption have been complied with[.]" KRS 199.520(1) (emphasis added).
In Wright , we cautioned against filing a dual petition, like the one filed in this case, because all too often counsel follow the wrong procedures with disastrous consequences. As we explained over thirty years ago:
In filing the petition as a dual one for adoption and termination of parental rights, apparently in an attempt to satisfy the requirements of both the adoption statutes and the involuntary termination statute the appellee Howards, as do most others taking this mistaken procedural approach, failed to fulfill [sic] various requirements of the adoption statutes, their only real concern under proper interpretation of KRS 199.500(4) and application of the strict compliance rule, and thereby caused the trial court to enter an invalid judgment.
711 S.W.2d at 496.
When the lives of children are involved, counsel must be especially diligent to follow the correct procedures. We are gravely concerned that Wright' s lessons have been lost to time. Today, we remind the Bar once again that when the petitioner is the person seeking to adopt a child, an adoption petition, not a petition for termination of parental rights, should be filed. If the lower court erroneously allows a dual petition to move forward and enters two judgments, we treat the judgments as one. On appeal, we will review the judgment for compliance with the adoption statutes. If the adoption statute's minimal jurisdictional requirements have not been satisfied, the judgment of adoption is void.[7] See Day v. Day , 937 S.W.2d 717, 719 (Ky. 1997).
B. Compliance with Adoption Statutes
Even though the parties designated their petition as one seeking termination of parental rights and adoption, and cite to the termination statute, we must review the record for compliance with the adoption statutes.[8]
*498 We begin with KRS 199.470. This statute contains the basic requirements that must be satisfied to petition for adoption in this Commonwealth. To petition for adoption, a person must be eighteen and "a resident of this state or who has resided in this state for twelve (12) months next before filing[.]" KRS 199.470(1). The petition should be filed in the county where the petitioner resides. Id. Adoptive Parents pleaded that they are residents of Kentucky; they filed their petition in Pike County where they reside. They are married and joined together in the petition, which satisfies KRS 199.470(2).
KRS 199.470(3) requires the child must have resided continuously with the petitioners "for at least ninety (90) days immediately prior to the filing of the adoption petition." The ninety-day requirement does not apply if the child was "placed for adoption by the cabinet, by an agency licensed by the cabinet, or with written approval by the secretary of the cabinet[.]" Id. Neither the Cabinet nor a child placing agency was involved in Child's initial placement with Adoptive Parents. Therefore, the ninety-day requirement applies. The record establishes that Child has lived continuously with Adoptive Parents since the fall of 2014. Adoptive Parents filed their petition in December of 2017. The ninety-day period was met.
Generally, a petition for adoption cannot be filed "unless prior to the filing of the petition the child sought to be adopted has been placed for adoption by a child-placing institution or agency, or by the cabinet, or the child has been placed with written approval of the secretary[.]" KRS 199.470(4). If approval is required, "a copy of the written approval of the secretary of the Cabinet for Health and Family Services or the secretary's designee shall be filed with the petition." KRS 199.490(3). However, approval and/or placement by the Cabinet is not required if: (a) the petition is being filed by a blood relative, stepparent, stepsibling or fictive kin; (b) a child is received by the proposed adopting parent or parents from an agency without this state with the written consent of the secretary; (c) the child is being adopted under the provisions of KRS 199.585(1) ; or (d) the child has been approved under KRS Chapter 615. KRS 199.470(4).
The Cabinet did not place Child with Adoptive Parents, and it does not appear that Adoptive Parents secured pre-approval from the Cabinet to adopt Child. Therefore, the petition was not proper unless one of the exemptions within the statute is satisfied. The only exemption that applies is (a). While Adoptive Parents are not related to Child by blood or Child's stepsiblings or stepparents, they meet the definition of fictive kin. " 'Fictive kin' means an individual who is not related by birth, adoption, or marriage to a child, but who has an emotionally significant relationship with the child." KRS 199.011(9). The record shows that Child regards Adoptive Parents as her family; she is emotionally attached to Adoptive Parents. The record supports that Adoptive Parents qualify as Child's fictive kin. Therefore, we find no discernable error with respect to the family court's determination that Adoptive Parents properly petitioned to adopt Child.
Next, we must determine whether Adoptive Parents complied with KRS 199.480, which governs party defendants, service of process, and guardian ad litem. To be valid, an adoption petition shall name as party defendants:
(a) The child to be adopted;
(b) The biological living parents of a child under eighteen (18), if the child is *499 born in lawful wedlock. If the child is born out of wedlock, its mother; and its father, if one (1) of the following requirements is met:
1. He is known and voluntarily identified by the mother by affidavit;
2. He has registered with the cabinet pursuant to KRS 199.503 as a putative father prior to the birth of the child, or if he did not have notice prior to the birth of the child, within thirty (30) days after the birth of the child;
3. He has caused his name to be affixed to the birth certificate of the child;
4. He has commenced a judicial proceeding claiming parental right;
5. He has contributed financially to the support of the child, either by paying the medical or hospital bills associated with the birth of the child or financially contributed to the child's support; or
6. He has married the mother of the child or has lived openly or is living openly with the child or the person designated on the birth certificate as the biological mother of the child.
A putative father shall not be made a party defendant if none of the requirements set forth above have been met, and a biological parent shall not be made a party defendant if the parental rights of that parent have been terminated under KRS Chapter 625, or under a comparable statute of another jurisdiction;
(c) The child's guardian, if it has one.
(d) If the care, custody, and control of the child has been transferred to the cabinet, or any other individual or individuals, institution, or agency, then the cabinet, the other individual or individuals, institution, or agency shall be named a party defendant, unless the individual or individuals, or the institution or agency is also the petitioner.
KRS 199.480(1). The adoption petition shall be served on the party defendants "in the same manner as provided in other civil cases except that if the child ... is under fourteen (14) years of age and the ... individual ... has custody of the child, the service of process upon the child shall be had by serving a copy of the summons in the action upon the ... individual ... any provision of CR 4.04(3) to the contrary notwithstanding." KRS 199.480(2).
In this case, Adoptive Parents named the Cabinet, Child, and both Child's biological parents as party defendants.[9] A review of the record shows that all parties were served in compliance with KRS 199.480(2). Furthermore, even though not required, a guardian ad litem was appointed for Child.[10]
After an adoption petition is filed, pursuant to KRS 199.510(1), the clerk of court must forward two copies of the petition to the Cabinet. Upon receipt, the Cabinet (or its designee) shall, to the extent of available facilities, commence an investigation *500 and file a written report of its results with the court. Id. The Cabinet's investigative report should address:
(a) Whether the contents of the petition required by KRS 199.490 are true;
(b) Whether the proposed adoptive parents are financially able and morally fit to have the care, custody and training of the child; and
(c) Whether the adoption is in the best interest of the child and the child is suitable for adoption.
Id. A KRS 199.510 investigative report was properly filed in this case. Therein, the Cabinet determined that the contents of the petition required by KRS 199.490 were true, Adoptive Parents were of good moral character and financially able to support Child, that Child was suitable for adoption and adoption was in Child's best interests.
In sum, having reviewed the adoption statutes in conjunction with the record, we are satisfied that the family court correctly concluded that Adoptive Parents were eligible to adopt Child and that the statutory prerequisites for adoption were satisfied in this case. As such, we will now examine the family court's decision to grant the adoption petition without Biological Mother's consent.
C. Adoption without Consent of Biological Parents
KRS 199.502(1) governs adoption without the consent of a child's biological living parents. It provides:
(1) Notwithstanding the provisions of KRS 199.500(1), an adoption may be granted without the consent of the biological living parents of a child if it is pleaded and proved as part of the adoption proceeding that any of the following conditions exist with respect to the child:
(a) That the parent has abandoned the child for a period of not less than ninety (90) days;
(b) That the parent had inflicted or allowed to be inflicted upon the child, by other than accidental means, serious physical injury;
(c) That the parent has continuously or repeatedly inflicted or allowed to be inflicted upon the child, by other than accidental means, physical injury or emotional harm;
(d) That the parent has been convicted of a felony that involved the infliction of serious physical injury to a child named in the present adoption proceeding;
(e) That the parent, for a period of not less than six (6) months, has continuously or repeatedly failed or refused to provide or has been substantially incapable of providing essential parental care and protection for the child, and that there is no reasonable expectation of improvement in parental care and protection, considering the age of the child;
(f) That the parent has caused or allowed the child to be sexually abused or exploited;
(g) That the parent, for reasons other than poverty alone, has continuously or repeatedly failed to provide or is incapable of providing essential food, clothing, shelter, medical care, or education reasonably necessary and available for the child's well-being and that there is no reasonable expectation of significant improvement in the parent's conduct in the immediately foreseeable future, considering the age of the child;
(h) That:
1. The parent's parental rights to another child have been involuntarily terminated;
2. The child named in the present adoption proceeding was born subsequent *501 to or during the pendency of the previous termination; and
3. The condition or factor which was the basis for the previous termination finding has not been corrected;
(i) That the parent has been convicted in a criminal proceeding of having caused or contributed to the death of another child as a result of physical or sexual abuse or neglect; or
(j) That the parent is a putative father, as defined in KRS 199.503, who fails to register as the minor's putative father with the putative father registry established under KRS 199.503 or the court finds, after proper service of notice and hearing, that:
1. The putative father is not the father of the minor;
2. The putative father has willfully abandoned or willfully failed to care for and support the minor; or
3. The putative father has willfully abandoned the mother of the minor during her pregnancy and up to the time of her surrender of the minor, or the minor's placement in the home of the petitioner, whichever occurs first.
KRS 199.502(1).[11]
The family court relied on subsections (e) and (g) regarding Biological Mother's continuous and repeated failure to provide for Child's needs and to care for Child.[12] R. at 57-8. We must determine whether substantial evidence supports the family court's conclusions with respect to one of these factors.
We will first examine subsection (g). It provides:
That the parent, for reasons other than poverty alone, has continuously or repeatedly failed to provide or is incapable of providing essential food, clothing, shelter, medical care, or education reasonably necessary and available for the child's well-being and that there is no reasonable expectation of significant improvement in the parent's conduct in the immediately foreseeable future, considering the age of the child[.]
KRS 199.502(1)(g).
Biological Mother's poverty is likely the reason the she is unable to financially support Child. She receives approximately thirty dollars a month, and she is unable to work. Biological Mother cannot be expected to financially support Child on such a meager sum. Therefore, we do not give much credence to Biological Mother's lack of financial support.
Lack of financial support, however, was not the family court's only basis for granting the adoption. It also predicated its order of adoption on Biological Mother's past, present, and future inability to provide essential parental care and protection for Child. To this end, KRS 199.502(1)(e) allows a court to grant an adoption without consent if the parent:
*502 for a period of not less than six (6) months, has continuously or repeatedly failed or refused to provide or has been substantially incapable of providing essential parental care and protection for the child, and that there is no reasonable expectation of improvement in parental care and protection, considering the age of the child.
KRS 199.502(1)(e) (emphasis added).
Biological Mother's actions were not necessarily willful. She did not freely decide to stop caring for Child; her mental illness rendered her unable to do so. We are sympathetic to her situation. The statute, however, is clear that the abandonment of care does not have to be willful. Even if the abandonment of care was not the parent's choice or preference, adoption can be granted so long as the family court finds that the parent is "substantially incapable" of providing care and protection and there is "no reasonable expectation of improvement."
Biological Mother's testimony supports the family court's conclusion that for a period of not less than six months Biological Mother has been substantially incapable of caring for Child, and there is no reasonable likelihood that she will be able to care for Child (or herself) any time in the reasonable future.[13] Having reviewed the record, we can discern no error in the family court's decision to grant the adoption petition.
IV. CONCLUSION
For the reasons set forth above, we affirm the orders of the Pike Circuit Court.
ALL CONCUR.

K.J.'s biological father was also named as a respondent and his parental rights were terminated as part of the adoption proceedings below. The father did not appeal. Accordingly, this Opinion relates only to C.J.'s claims.

Anders v. California , 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

Along with the Anders brief, C.J.'s counsel filed a motion seeking permission to withdraw as counsel on appeal. The Court referred counsel's motion to this panel to be decided in conjunction with the underlying appeal. By separate order, we have granted counsel leave to withdraw.

As will be discussed below, Adoptive Parents lacked standing to petition for termination. Nevertheless, their simultaneous compliance with the adoption statutes salvaged what would have otherwise been a defective pleading.

Kentucky Revised Statutes.

Kentucky Rules of Civil Procedure.

This is significant because a void judgment can be attacked via CR 60.02(e) even after the appeal period has expired.

In this case, this inures to the benefit of Adoptive Parents because they lacked standing to seek involuntary termination of Biological Mother's parental rights. KRS 625.050(3) ("Proceedings for involuntary termination of parental rights may be initiated upon petition by the cabinet, any child-placing agency licensed by the cabinet, any county or Commonwealth's attorney or parent.").

KRS 199.480(1)(d) only requires joinder of the Cabinet if the child's care, custody, and control had previously been transferred to the Cabinet. In this case, it does not appear that the Cabinet ever had custody of Child. Therefore, it was not necessary for Adoptive Parents to name the Cabinet. Id. ("If the care, custody, and control of the child has been transferred to the cabinet ... then the cabinet ... shall be named a party defendant ..." (emphases added) ).

Because both Child's biological parents were party defendants the family court was not required to appoint a guardian ad litem for Child. See KRS 199.480(3) ("If the child's biological living parents, if the child is born in lawful wedlock, or if the child is born out of wedlock, its mother, and if paternity is established in legal action or if an affidavit is filed stating that the affiant is father of the child, its father, are parties defendant, no guardian ad litem need be appointed to represent the child to be adopted.").

One of the fundamental differences between termination of parental rights cases and adoption without consent cases is the absence of an abuse or neglect requirement in the adoption without consent statute. In a parental termination action, the family court must make a threshold finding that the child was either previously adjudged to be an abused or neglected child or is currently an abused or neglected child. KRS 625.090(1)(a). By contrast, "an adoption under KRS 199.502... does not require a prior finding by a court that the child had been neglected or abused." B.L. , 434 S.W.3d at 67.

The family court cited KRS 625.090, the parental termination statute; however, KRS 199.502(1)(a)-(j) actually mirrors KRS 625.090(2)(a)-(j) with respect to the grounds necessary to grant an adoption without consent. The family court's reliance on the termination statute did not prejudice Biological Mother or render its ultimate conclusions invalid. The correct law was applied.

Prior to 1987, it was "incumbent upon the court when considering a petition to adopt pursuant ... to also consider any less drastic measures to accomplish the child's best interest." D.S. v. F.A.H. , 684 S.W.2d 320, 323 (Ky. App. 1985). If this were still the law, affirming the family court would be far more difficult since Adoptive Parents could maintain permanent custody of Child with Biological Mother continuing her limited supervised visitation. However, "the current statute and its corresponding case law contain no requirement that a court consider means less drastic than adoption prior to a judgment of adoption." B.L , 434 S.W.3d at 67.