RENDERED: AUGUST 30, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0755-ME

C.M.I.                                                                          APPELLANT

|                    | APPEAL FROM LIVINGSTON CIRCUIT COURT |
|--------------------|--------------------------------------|
| v.                 | HONORABLE JAMES R. REDD, III, JUDGE<br>ACTION NO. 21-AD-00002 |

R.D.H., JR.; N.N.H.;
COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES; D.I.; AND P.S.I.,
A MINOR CHILD                                                            APPELLEES

AND

NO. 2023-CA-0756-ME

C.M.I.                                                                          APPELLANT

|                    | APPEAL FROM LIVINGSTON CIRCUIT COURT |
|--------------------|--------------------------------------|
| v.                 | HONORABLE JAMES R. REDD, III, JUDGE<br>ACTION NO. 21-AD-00003 |

R.D.H., JR.; N.N.H.;
COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND

FAMILY SERVICES; D.I.; AND
C.L.I., A MINOR CHILD                                                APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, CETRULO, AND TAYLOR, JUDGES.

TAYLOR, JUDGE:  C.M.I. (Mother) brings this consolidated appeal from orders of the Livingston Circuit Court entered on March 15, 2023, terminating her parental rights as to P.S.I. and C.L.I. and granting the adoption petitions filed by appellees, R.D.H., Jr., and N.N.H.  We affirm.

FACTUAL BACKGROUND

P.S.I., a minor child, was born on August 12, 2016.  C.L.I., a minor child, was born on August 14, 2018.  Mother and D.I. (Father) struggled with substance abuse which led to the Cabinet for Health and Family Services (Cabinet) filing a Dependency, Neglect, or Abuse (DNA) petition on June 8, 2018.  Therein, the Cabinet alleged that P.S.I. was observed with an untreated facial wound; that the parents were suspected of illegal drug use; and that the living environment for P.S.I. was unsafe.  A similar DNA petition pertaining to C.L.I. was filed in August of 2018.  R.D.H., Jr. and N.N.H.[1] were granted permanent custody of both children

---

[1] Petitioners are the children's biological maternal grandfather and his wife.

on August 22, 2019, after having been P.S.I.'s primary caretaker since June of 2018, and C.L.I.'s caretaker since birth.[2]  On October 1, 2021, R.D.H., Jr. and N.N.H. (collectively, Petitioners) filed a "Petition for Adoption by Relatives Without the Consent of the Child's Biological Living Parents" pursuant to Kentucky Revised Statutes (KRS) 199.470 *et seq.* in the Livingston Circuit Court.[3] Separate actions were filed for each child.   Subsequently, on March 30, 2022, the circuit court held a hearing regarding the termination of both Mother and Father's parental rights in both cases; neither parent attended.  The circuit court entered an Order on May 4, 2022, terminating the parental rights of Mother and Father.

On June 15, 2022, Mother filed a Motion to Alter, Amend, or Vacate, arguing she did not receive notice of the final hearing.  Mother had filed a notice with the court on January 24, 2022, stating that she was in a recovery facility in Mayfield, Kentucky, and none of the pleadings or notices regarding the matter were sent to her at that facility.  The court granted Mother's Motion to Alter, Amend, or Vacate on June 29, 2022.  Mother was appointed counsel on August 23, 2022, and a bench trial was set for October 26, 2022.  At the October 26, 2022,

---

[2] C.L.I.'s dependency, neglect, and abuse (DNA) case was filed on August 14, 2018, his date of birth.  Both DNA cases originated in Livingston County and were transferred to McCracken County in December of 2018 because R.D.H., Jr., and N.N.H. moved to McCracken County. *See* Action Nos. 18-J-00452-001 and 18-J-00453-001.

[3] Livingston County does not have a family court judge.  All proceedings were conducted in the circuit court.

bench trial, Mother asked for a continuance and requested that petitioner's counsel be removed due to a possible conflict. The continuance was granted and the circuit court set a pretrial conference for December 21, 2022. At the December 21, 2022, pretrial conference, petitioner's attorney reported there was no conflict found by the Kentucky Bar Association ethics hotline, and the circuit court set the matter for a bench trial on February 22, 2023.

The bench trial was conducted on February 22, 2023. The circuit court heard testimony from Mother, Father, both Petitioners, and a social worker previously involved in the case. Mother testified about the actions she had taken to better her life in the preceding fourteen months, such as maintaining sobriety, stable housing, and a job.[4] Petitioners testified about their lives with both children, and how they are the only parents both children have truly known due to the tender age of both children when they were removed from Mother's care and placed with Petitioners. Petitioners further testified that Mother had not seen the children since 2021, although she had attempted to send letters and Christmas gifts to them. Petitioners testified that they had denied Mother's efforts to contact the children, which Mother commenced in 2021, after the adoption petitions were filed.

---

[4] Mother testified that she completed a recovery program in Mayfield, Kentucky, in February of 2022 and proceeded to another program in Lexington, Kentucky. Upon graduating from that program in October of 2022, she moved into a trailer in Versailles, Kentucky, where she presently resides.

Petitioners testified they did not believe it was in the best interest of the children to have contact with C.M.I.

On March 15, 2023, the circuit court entered its Findings of Fact, Conclusions of Law and Order Terminating Parental Rights in both cases based on the evidence heard at the February 22, 2023, hearing.[5] Mother then filed a Motion to Alter, Amend, or Vacate on March 27, 2023. The motion was denied by the circuit court by Orders entered on May 19, 2023. An appeal was filed by C.M.I. in both cases, which were consolidated for review by Order entered by this Court on August 17, 2023.[6]

## STANDARD OF REVIEW

To begin, an adoption without the consent of a living parent under KRS 199.502 is still effectively a proceeding to terminate parental rights. *C.J. v. M.S.*, 572 S.W.3d 492, 496 (Ky. App. 2019); *see also M.S.S. v. J.E.B.*, 638 S.W.3d 354, 359 (Ky. 2022). Thus, in adoption without parental consent cases, our standard of review is the same as in termination cases as follows:

> The standard of review in a termination of parental rights action is confined to the clearly erroneous standard in CR 52.01 based upon clear and convincing evidence. The findings of the trial court will not be disturbed unless there exists no substantial evidence in the record to

---

[5] The Order Terminating Parental Rights in each case also granted the adoptions sought by Petitioners.

[6] Father did not file an appeal.

-5-

support its findings. Clear and convincing proof does not necessarily mean uncontradicted proof. It is sufficient if there is proof of a probative and substantial nature carrying the weight of evidence sufficient to convince ordinarily prudent-minded people. *M.P.S. v. Cabinet for Human Resources*, 979 S.W.2d 114, 116-17 (Ky. App. 1998). Additionally, since adoption is a statutory right which severs forever the parental relationship, Kentucky courts have required strict compliance with the procedures provided in order to protect the rights of the natural parents. *See Day v. Day*, 937 S.W.2d 717 (Ky. 1997).

*B.L. v. J.S.*, 434 S.W.3d 61, 65 (Ky. App. 2014).

This standard of review reflects the law's protection of the parental-child relationship. While termination proceedings are not criminal matters, they encroach "on the parent's constitutional right to parent his or her child, and therefore, is a procedure that should only be employed when the statutory mandates are clearly met." *M.E.C. v. Commonwealth of Kentucky, Cabinet for Health and Fam. Servs.*, 254 S.W.3d 846, 850 (Ky. App. 2008). In this regard, we note that parental rights are a "fundamental liberty interest protected by the Fourteenth Amendment" of the United States Constitution. *Santosky v. Kramer*, 455 U.S. 745, 753 (1982); *see also M.S.S.*, 638 S.W.3d at 359. When the government acts to terminate a parent's rights, it is not merely infringing on those rights; it is ending them. *Lassiter v. Dep't of Social Servs. of Durham County, N.C.*, 452 U.S. 18, 27 (1981). The protection of these rights is not reduced or altered where termination of parental rights occurs in an adoption proceeding.

-6-

Regardless of how achieved, termination of parental rights is a serious action which the courts must conduct with the "utmost caution." *M.E.C.*, 254 S.W.3d at 850. Therefore, in order to pass Constitutional muster, the evidence supporting termination must be clear and convincing. *Santosky*, 455 U.S. at 769-70; *F.V. v. Commonwealth, Cabinet for Health Fam. Servs.*, 567 S.W.3d 597, 606 (Ky. App. 2018) (citation omitted).

Notwithstanding this standard of review, we acknowledge the legal conundrum created by the distinction in the statutory framework set out in KRS 199.502 versus KRS 625.090, regarding the termination of parental rights of nonconsenting parents. Clearly, there is a lesser threshold for terminating parental rights in the adoption statute (KRS 199.502) as compared to the tripartite test set out in KRS 625.090 in regard to terminations sought by the Cabinet. *See Cabinet for Health and Family Services v. K.H.*, 423 S.W.3d 204, 209 (Ky. 2014).[7] Arguably, the protections afforded to nonconsenting parents whose parental rights are terminated in an adoption under KRS 199.502 are significantly less than those afforded to parents in termination proceedings set out in KRS 625.090.[8] However, the Kentucky Supreme Court has clearly stated that the adoption proceeding

---

[7] By contrast, in an adoption proceeding that seeks to terminate parental rights under Kentucky Revised Statutes (KRS) 199.502, a party need only prove by clear and convincing evidence one of the conditions set out in KRS 199.502(1)(a)-(j) to successfully terminate parental rights.

[8] For a thorough discussion of this statutory conundrum, see the dissent of Justice Lambert in *M.S.S. v. J.E.B.*, 638 S.W.3d 354, 371-79 (Ky. 2022).

supersedes the termination and KRS Chapter 199 governs over the entire proceeding, including the termination of parental rights. *M.S.S.*, 638 S.W.3d at 361. This Court is duty bound to follow Supreme Court precedent. Supreme Court Rule 1.030(8)(a). Our review proceeds accordingly.

## ANALYSIS

Under KRS 199.502(1), "an adoption may be granted without the consent of the biological living parents of a child if it is pleaded and proved as part of the adoption proceeding that any of the [nine] following conditions exist with respect to the child[.]" KRS 199.502(1); *R.P., Jr. v. T.A.C.*, 469 S.W.3d 425, 427 (Ky. App. 2015). In this case, the circuit court based its decision primarily on subsections (e) and (g) of the statute which read as follows:

> (e) That the parent, for a period of not less than six (6) months, has continuously or repeatedly failed or refused to provide or has been substantially incapable of providing essential parental care and protection for the child, and that there is no reasonable expectation of improvement in parental care and protection, considering the age of the child;
>
> . . . .
>
> (g) That the parent, for reasons other than poverty alone, has continuously or repeatedly failed to provide or is incapable of providing essential food, clothing, shelter, medical care, or education reasonably necessary and available for the child's well-being and that there is no reasonable expectation of significant improvement in the parent's conduct in the immediately foreseeable future, considering the age of the child[.]

KRS 199.502(1)(e) and (g). Mother argues that the circuit court erred in finding there was no reasonable expectation of significant improvement in the immediately foreseeable future because she has made several changes to her life such as maintaining sobriety, housing, and a job. She asserts her recent actions demonstrate a reasonable expectation of improvement in her conduct, contrary to the circuit court's determination. In support thereof, Mother cites *M.E.C.*, 254 S.W.3d at 851-52.

In *M.E.C.*, 254 S.W.3d 846, the Court held that the circuit court's termination of M.E.C.'s parental rights was not supported by substantial evidence where the Cabinet had not shown that the children were abused or neglected under KRS 600.020(1); where the Cabinet failed to offer reasonable services to M.E.C.; and where M.E.C. had timely made significant strides in her case plan such that the Cabinet had not proven there was "no reasonable expectation of improvement in M.E.C.'s situation." *M.E.C.*, 254 S.W.3d at 854. M.E.C. had made timely improvements to her life, and "[a]t the conclusion of the trial, M.E.C. was in a substance abuse treatment center, had a full-time job, acquired parenting classes for herself, and had resolved most of her legal issues." *Id.* at 854.

Moreover, in *M.E.C.*, 254 S.W.3d 846, the family court's finding that the children in question had been abused or neglected was not supported by substantial evidence. *Id.* There was no evidence demonstrating physical or

emotional injury of the children while in M.E.C.'s care; on the contrary, both children were in good health at the time of their removal from her custody. *Id.* Finally, testimony from social workers described M.E.C. as a "nurturing and loving parent[.]" *Id.* at 851.

Unlike what occurred in *M.E.C.*, in this case, Mother and Father conceded to neglect in a DNA proceeding in 2018. Mother failed to engage in lifestyle improvements or seek any treatment until the adoption petition was filed in late 2021. This case is more factually similar to *A.F. v. L.B.*, 572 S.W.3d 64 (Ky. App. 2019). In *A.F.*, this Court held that the parents' history of drug use, failure to maintain permanent sobriety, and limited amount of time the parents spent with the child were grounds for termination of their parental rights. *A.F.*, 572 S.W.3d at 74-75. The Court in *A.F.* emphasized that it was only *after* the termination petition was filed that the parents started to work toward control of their lives and started to show interest in reuniting with their child. *Id.* Appellant in *A.F.* argued that her efforts showed a reasonable expectation of parental improvement. *Id.* In determining "whether a parent has a reasonable expectation for improvement" the court may examine that party's current and past parenting ability. *A.F.*, 572 S.W.3d at 76. Under that standard, the Court held appellant's actions to be "too little and too late to reclaim a relationship with Child which, for

Child's tenderest years, Mother voluntarily subordinated to pursue an illicit life of drugs and company with those who do worse." *Id.* at 75.

In our case, both C.M.I and D.I. were abusing drugs while their children were living with them and at the time of the children's removal from their custody. Both admitted to having an unsuitable housing condition for their children including the oldest child receiving a dog bite to the face in 2018 which became infected due to lack of medical treatment. Mother continued to abuse methamphetamine while pregnant with the youngest child, C.L.I. The DNA petition was first filed in June 2018, as concerns P.S.I., and Petitioners received permanent custody of both children in August 2019; it was not until after the filing of the adoption petition in 2021, that Mother sought to attain sobriety.[9] Furthermore, neither parent has seen their children in over two years. Unlike in *M.E.C.*, here, Mother's absence in her children's lives was a result of her poor choices rather than mere incarceration or hospitalization. Like in *A.F.*, Mother's recent progress, although commendable, was "too little too late." *A.F.*, 572 S.W.3d at 75.

---

[9] Appellant, C.M.I., testified that she had been sober for fourteen and one half months at the time of the February 22, 2023, hearing. Video Record at 11:23:25. The children's Father, D.I., also testified at the hearing, describing how he and C.M.I. had been doing better, but described how he had relapsed beginning in 2019.

The record reflects that the circuit court took Mother's recent steps for improvement into consideration when determining whether to grant the adoption petition. The court had the sole responsibility to weigh the evidence to reach its decision in concluding that the conditions set forth in KRS 199.502(e) and (g) were established by clear and convincing evidence. We agree and otherwise cannot substitute our judgment for the court below in so finding. The circuit court's findings were not clearly erroneous.

We would be remiss if we did not note that while not a party to this action, the Cabinet has a role in adoptions. Under KRS 199.510, the Cabinet must investigate the adoption petitions and the adoptive parents. Thereafter, the Cabinet must file a confidential report with the court before the evidentiary hearing can be conducted. This report includes whether the adoption is in the best interest of the children and if the children are suitable for adoption. KRS 199.510(1)(c). In both cases on appeal, the Cabinet conducted an investigation and filed a report on December 10, 2021, prior to the hearing on February 22, 2023. In both cases, the Cabinet recommended that the adoption petitions be granted. Additionally, the guardian *ad litem* for the children in both cases also recommended the granting of the adoption petitions.

## CONCLUSION

For the foregoing reasons, the Livingston Circuit Court's March 15, 2023, Findings of Fact, Conclusions of Law and Order terminating the parental rights of Mother and granting Petitioners' adoption petitions as to both children are AFFIRMED.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Gini G. Grace
Symsonia, Kentucky

BRIEF FOR APPELLEES:

Jennifer Peek
Paducah, Kentucky