RENDERED: DECEMBER 12, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0423-ME

J.R.R.                                                              APPELLANT

v.                  APPEAL FROM BOONE CIRCUIT COURT
              HONORABLE JENNIFER R. DUSING, JUDGE
                    ACTION NO. 23-AD-00040

K.J.; A.E.; L.M.J.R., A MINOR
CHILD; AND P. J.                                                  APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, ECKERLE, AND KAREM, JUDGES.

KAREM, JUDGE: J.R.R. ("Father") appeals the Boone Circuit Court's order

granting Appellees' petition for adoption of L.M.J.R. ("Child"). Finding no error,

we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Child's biological mother, A.E. ("Mother"), gave birth to Child in November 2014. Child was born prematurely with methadone in his system and spent several weeks in the NICU after his birth.

Child began living with P.J., his maternal grandmother, and K.J., his maternal step-grandfather, in December 2014, in Kenton County. When Child was approximately seven (7) months old, Mother relapsed and began using drugs again. P.J. contacted the Cabinet for Health and Family Services (the "Cabinet") and the Cabinet filed a dependency, neglect, or abuse ("DNA") petition in Kenton Family Court. The Kenton Family Court awarded P.J. temporary custody of Child in January 2016. On September 11, 2017, the Kenton Family Court awarded P.J. permanent custody of Child and gave Father supervised visits every other week for four (4) hours.

In October 2018, the Appellees filed a petition to adopt Child in Kenton Family Court (the "First Petition"). The Cabinet filed a written report recommending that the court grant the First Petition. The Kenton Family Court conducted an evidentiary hearing in December 2020 and entered findings of fact and conclusions of law denying the First Petition on January 12, 2021. On appeal, this Court concluded that the Kenton Family Court had incorrectly applied the law to the facts by ignoring the adoption statutes and applying only the mandates of

Kentucky Revised Statute ("KRS") Chapter 625. On remand, the Kenton Family Court issued revised conclusions of law on August 25, 2022, finding that the Appellees had not proven that they had met the conditions contained in KRS 199.502 and again denied the First Petition.

On June 12, 2023, Appellees filed another petition for Child's adoption with the Boone Family Court (the "Second Petition"). Appellees and Child had moved to Boone County during the pendency of the First Petition to provide Child with a more neighborhood-like environment and a larger home. The Cabinet filed a report on September 15, 2023, recommending that the family court grant the Second Petition. On April 9, 2024, Mother waived her rights and consented to Child's adoption by Appellees.

Father filed a motion to dismiss the Second Petition on *res judicata* grounds on November 16, 2023, and Appellees filed a response to the motion to dismiss on December 7, 2023. The family court held a hearing on the motion to dismiss on May 14, 2024, to determine whether any significant changes had occurred since the date of the hearing on the First Petition in December 2020.

On May 22, 2024, the family court entered an order denying Father's motion to dismiss and finding that there had been a material change of conditions since the First Petition was considered by the Kenton Family Court in December of 2020, such that the issues presently before the family court were not identical to

the issues previously considered.  Thus, the family court held that *res judicata* was not a bar to holding a hearing on the Second Petition.

The Boone Family Court held a hearing on the Second Petition on January 13, 2025, at which all parties were represented by counsel.  On February 28, 2025, the family court entered Findings of Fact and Conclusions of Law, along with a Judgment of Adoption granting the Second Petition.  This appeal followed.

We will discuss further facts as they become relevant.

## ANALYSIS

### 1. Appellees' Motion to Strike Father's Appellate Brief and Reply Brief

Appellees have moved to strike portions of Father's brief and reply brief, alleging that both documents failed to substantially comply with Kentucky Rules of Appellate Procedure ("RAP") 32(A)(4) and RAP 31(E)(1).  Father has filed no response.

As discussed by a panel of this Court, "[i]t is a dangerous precedent to permit appellate advocates to ignore procedural rules." *Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010).  "They are lights and buoys to mark the channels of safe passage and assure an expeditious voyage to the right destination. Their importance simply cannot be disdained or denigrated." *Id.* (internal quotation marks and citations omitted).  "Our options when an appellate advocate fails to abide by the rules are: (1) to ignore the deficiency and proceed with the

review; (2) to strike the brief or its offending portions, [RAP 31(H)(1)]; or (3) to review the issues raised in the brief for manifest injustice only[.]" *Id.* (citation omitted).

Given the important nature of child adoption cases, we are not inclined to strike either brief in its entirety or any portions thereof. However, we warn counsel that in the future this Court may not be so tolerant, and we admonish counsel to strictly follow the rules or risk having any future briefs stricken and/or being held in contempt.

### 2. Discussion

### a. Father's Motion to Dismiss Based on *Res Judicata*

Father first argues that the family court erred in denying his motion to dismiss based on *res judicata*. Specifically, Father claims that the matter was litigated and finally decided by the Kenton Family Court during its adjudication of the First Petition. A motion to dismiss for failure to state a claim upon which relief may be granted is reviewed *de novo*, as it presents only a question of law. *Fox v. Grayson*, 317 S.W.3d 1, 7 (Ky. 2010) (footnote omitted).

The Kentucky Supreme Court has explained the doctrine of *res judicata* as follows:

> The rule of *res judicata* is an affirmative defense which operates to bar repetitious suits involving the same cause of action. The doctrine of *res judicata* is formed by two subparts: 1) claim preclusion and 2) issue

preclusion. Claim preclusion bars a party from re-litigating a previously adjudicated cause of action and entirely bars a new lawsuit on the same cause of action. Issue preclusion bars the parties from relitigating any issue actually litigated and finally decided in an earlier action. The issues in the former and latter actions must be identical.

*Yeoman v. Commonwealth, Health Policy Bd.*, 983 S.W.2d 459, 464-65 (Ky. 1998)

(footnote and citations omitted). However, in relation to judgments subject to later

modification, this Court has adopted Comment c to Section 13 of the

RESTATEMENT (SECOND) OF JUDGMENTS, which provides:

A judgment concluding an action is not deprived of finality for purposes of *res judicata* by reason of the fact that it grants or denies continuing relief, that is, requires the defendant, or holds that the defendant may not be required, to perform acts over a period of time. Judgments of these types are rendered typically in actions for injunctions, specific performance, alimony, separate maintenance, and child support and custody.

The *res judicata* consequences of such judgments follow normal lines while circumstances remain constant, *but those consequences may be affected when a material change of the circumstances occurs after the judgment*. Thus if the judgment denied on the merits the continuing relief sought, but there has been a later material change of conditions, a new claim may arise upon the later facts (*to be considered sometimes in combination with the old*), *and that claim will be held not barred by the previous judgment*[.]

*Wheeler v. Wheeler*, 154 S.W.3d 291, 294 (Ky. App. 2004) (emphasis added)

(footnote omitted). Thus, the issue before the family court when analyzing

Father's motion to dismiss was whether Appellees had presented evidence of a material change in the circumstances since the Kenton Family Court took evidence regarding the First Petition.

In this case, we agree with the family court that there was evidence of a material change in conditions since the hearing on the First Petition in December 2020, such that *res judicata* was not implicated. Indeed, Child was older, had developed significantly while living full-time with the Appellees, and was becoming more aware of his situation. Mother had also consented to the adoption in the Second Petition, which was a significant change in circumstances. Moreover, Mother had also continued to struggle with sobriety and had, in fact, overdosed approximately two (2) weeks before the hearing on Father's motion to dismiss the Second Petition. The overdose required police assistance and the administration of Narcan and resulted in Mother being charged with public intoxication and possession. Father was present at the event and, since December 2020, had picked Mother up early from various inpatient recovery programs, bonded her out of jail, and administered Narcan and CPR to her multiple times due to her drug use. Finally, since December 2020, Father had failed to exercise a great deal of the parenting time to which he was entitled and had never sought an increase in his parenting time or for his visits to be unsupervised. Therefore, we agree with the family court that, due to the change in circumstances, the action was

not barred on *res judicata* grounds and the family court correctly denied Father's motion to dismiss.

### b. Motion for Continuance

Father next argues that the family court erred in denying his motion for a continuance. As stated by the Kentucky Supreme Court, "whether to grant a motion for continuance is well within the sound discretion of the trial court." *Hunter v. Commonwealth*, 869 S.W.2d 719, 720-21 (Ky. 1994) (citations omitted). Indeed, "a trial court's ruling on a continuance motion will remain undisturbed unless it appears to the appellate court that, in overruling the motion, there was a clear abuse of judicial discretion such as to deny the accused substantial justice." *Id.* (citations omitted).

In this case, Appellees filed the Second Petition with the Boone Family Court on June 12, 2023. The family court scheduled a final hearing for March 5, 2024. Subsequently, by agreement of all parties, the family court continued the hearing to September 9, 2024. On September 4, 2024, Father filed a motion to continue the September 9, 2024, final hearing for assorted reasons, including the flare-up of a painful leg condition, court proceedings involving his older children, and unreliable transportation. The family court granted this motion, rescheduled the final hearing to January 13, 2025, and noted on its docket sheet that this would be the last continuance.

Thereafter, Father retained new counsel, who entered her appearance on January 3, 2024—nearly four months after the family court granted Father's motion for a continuance and only one (1) week before the rescheduled hearing date. Father's new counsel filed a motion to continue the final hearing, stating that she needed more time to prepare for the hearing scheduled for seven (7) days later. The family court denied this motion at the beginning of the January 13, 2025, final hearing, and held the final hearing on this date.

In his brief, Father argues that because of the trial court's denial of his motion to continue, Father was unable to present all the evidence he wished to present during the trial. However, Father did not provide any evidence of a clear abuse of judicial discretion that denied him substantial justice. Father chose to retain new counsel on or about January 3, 2025, only ten (10) days before the scheduled January 13, 2025, final hearing date, which Father had been aware of for approximately four (4) months. Father's attorney was included on both the court's May 22, 2024, order denying Father's motion to dismiss as well as its trial order dated September 11, 2024, which stated that the hearing was scheduled for January 13, 2025. It was well within the trial court's discretion to deny the motion to continue because it had already continued the matter twice. On the date of the hearing, the Second Petition had been pending for approximately eighteen (18) months. In the interests of justice and the best interests of the Child, it was not an

abuse of discretion for the family court to deny Father's second motion to continue the final hearing.

### c. **Substantial Evidence Supporting the Circuit Court's Granting of the Second Petition**

Finally, Father argues that the circuit court's findings in its order granting the Second Petition were not supported by sufficient evidence and were thus clearly erroneous. As discussed by a panel of this Court, "[a]n adoption without the consent of a living biological parent is, in effect, a proceeding to terminate that parent's parental rights." *B.L. v. J.S.*, 434 S.W.3d 61, 65 (Ky. App. 2014) (citation omitted). Therefore, "in adoption without consent cases we apply the same standard of review that governs parental termination cases." *C.J. v. M.S.*, 572 S.W.3d 492, 496 (Ky. App. 2019). "Our review is confined to the clearly erroneous standard in [Kentucky Rule of Civil Procedure ("CR")] 52.01 based upon clear and convincing evidence." *Id.* Thus, we will not disturb the family court's findings "unless there exists no substantial evidence in the record to support them." *Id.* (citations omitted).

Under this standard, "[c]lear and convincing proof does not necessarily mean uncontradicted proof; but rather, requires there is proof of a probative and substantial nature that is sufficient to convince ordinarily prudent minded people." *Id.* (citation omitted). Moreover, "'we are required to give considerable deference to the [family] court's findings, and we will not disturb

-10-

those findings' unless the record provides no substantial support for them." *Id.* (quoting in part *K.R.L. v. P.A.C.*, 210 S.W.3d 183, 187 (Ky. App. 2006)). "Additionally, since adoption is a statutory right which severs forever the parental relationship, Kentucky courts have required strict compliance with the procedures provided in order to protect the rights of the natural parents." *B.L.*, 434 S.W.3d at 65 (citation omitted).

To prevail on a petition for adoption without the consent of a child's biological parent, the petitioner must prove the existence of any one of the conditions outlined in KRS 199.502(1)(a)-(j). *A.K.H. v. J.D.C.*, 619 S.W.3d 425, 432 (Ky. App. 2021). Here, the family court determined that the Appellees had successfully proven that Father, for a period of not less than six months, had continuously or repeatedly failed or refused to provide or had been substantially incapable of providing essential parental care and protection for Child, and that there was no reasonable expectation of improvement in parental care and protection considering Child's age. KRS 199.502(1)(e).

We agree with the family court that Appellees produced substantial evidence demonstrating that Father had never—for Child's entire life—been a consistent, present parent to Child and that Appellees have been Child's only parental figures. Both Appellees testified that Father had only exercised about thirty percent (30%) of the parenting time to which he was entitled. Father

regularly and consistently misses visits with Child for a number of reasons—and sometimes for no reason at all—and had gone at least three (3) consecutive months without visiting Child at all. Father's excuses for missing his visitation included being sore from working out, that he was stuck in traffic, that he had to let the cable guy into his house, that he had to help a friend move a refrigerator, and that his internet was not working. Moreover, P.J. testified that, of the visits he had kept, Father never once stayed for the full four (4) hours.

Moreover, Father failed to file any motions to gain custody, increase his parenting time, or lift the supervision requirement for parenting time. Indeed, as the family court stated in its Findings of Fact and Conclusions of Law, "[Father] has never been involved with [Child's] school, asked about [Child's] education, or helped [Child] with homework. He has never been present for a surgery or attended any of [Child's] medical appointments. He has never provided daily care for [Child], fed [Child] consistent meals, ensured [Child] ha[s] proper sleep, or taken care of [Child] when he is sick."

We further agree with the family court that Father has "demonstrated a repeated inability to use prudent judgment[.]" Significant evidence was presented that Father consistently enabled Mother's drug use. Moreover, Father has never worked a case plan with the Cabinet, and the Cabinet stated in its mandatory report regarding the Second Petition that it had sent Father forms to be

completed and had offered a face-to-face interview. Father never returned the forms or requested an interview. Based on the foregoing evidence, we find no clear error with the family court's findings under KRS 199.502(1)(e).

We further agree with the family court that Appellees had successfully proven that, for reasons other than poverty alone, Father had continuously or repeatedly failed to provide or was incapable of providing essential food, clothing, shelter, medical care, or education reasonably necessary and available for Child's well-being and there was no reasonable expectation of significant improvement in Father's conduct in the immediately foreseeable future, considering Child's age. KRS 199.502(1)(g). As previously discussed, Appellees provided evidence that they have provided the totality of Child's care for his entire life, including Child's medical care. Child was born six (6) weeks premature with methadone in his system, and Father was not present for his birth. Nor did Father, at any time, visit Child while he was in the NICU after birth. Child suffered serious medical defects in his early years due to his premature birth and underwent several major medical procedures as a result. Father did not attend any of Child's medical procedures and was not involved in his speech therapy.

Moreover, there was no evidence that Father had ever purchased clothing or food for Child or ensured that he was clothed or fed on a daily basis. Child had lived with Appellees since he was merely weeks old, and Father had

-13-

never provided Child with shelter. As for Child's education, Appellees have enrolled Child in every daycare and school that he has ever attended, and Father has never participated in the enrollment process. Father had never been to Child's school, met his teachers, or attended a parent-teacher conference. Father has never helped Child with his homework, read books with him, or ensured that he even went to school.

Finally, we agree with the family court that adoption is in Child's best interests. Child is deeply attached to the Appellees and is comfortable in their home. Appellees attend to all of Child's medical and educational needs and have provided numerous enrichment and extra-curricular opportunities. In sum, the Appellees are the only parents Child has ever known.

Because the evidence presented at trial clearly established Father's prolonged failure to provide essential parental care under KRS 199.502(1)(e), his inability to meet Child's basic needs under KRS 199.502(1)(g), and that adoption by the Appellees is in Child's best interests, the family court properly found that Father's parental rights should be terminated and that the Second Petition should be granted. Given the lack of any reasonable expectation that Father's conduct will improve, and considering the Child's best interests and stability, we affirm the family court's decision.

## CONCLUSION

For the foregoing reasons, we affirm the Boone Circuit Court's order granting the Second Petition.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Daniel T. Guidugli
Alexandria, Kentucky

BRIEF FOR APPELLEE:

Tasha K. Schaffner
Crestview Hills, Kentucky