Zelma Yarbrough ROARK, Appellant,

v.

Robert M. YARBROUGH et al., Appellees.

Court of Appeals of Kentucky.

Nov. 18, 1966.

Rehearing Denied March 24, 1967.

William E. Scent, Reed & Scent, Paducah, for appellant.

Harry W. Roberts, Jr., Clinton, for appellees.

HILL, Judge.

This suit was instituted by appellees Robert M. and Cora L. Yarbrough to adopt their five grandchildren, ranging from eleven to four years of age, and a stepgrandchild, Danny Thomas Williams, age thirteen. Appellant, the mother of the children, married John Wright Roark shortly before this suit was filed. The father of the five children was the only child of appellees Robert M. and Cora L. Yarbrough.

The judgment of the circuit court allowed the adoption of the six children, and this appeal followed.

Appellant, a thirty-year-old mother, had one child before her marriage to Yarbrough. This child, Danny Thomas Williams, has resided continuously with the five younger children.

Appellee Robert M. Yarbrough is fifty-five years of age and Cora L. is fifty-one.

In their complaint appellees asked (a) that the parental rights of the mother and father of Danny Thomas Williams be terminated, (b) for a termination of the parental rights of the mother of the other five children, and (c) that a judgment be entered allowing them to adopt the six children.

The judgment appealed from sustained the prayer for adoption but declined to terminate the parental rights.

Ordinarily, consent of the parents must be obtained before adoption may be granted. KRS 199.500. But there are exceptions, one being found in KRS 199.-500(4) which we quote:

"Notwithstanding the provisions of subsection (1) of this section, an adoption may be granted without the consent of the natural living parents of a child if it is pleaded and proved as a part of the adoption proceedings that any of the provisions of subsections (1) or (2) of KRS 199.600 exist with respect to such child."

Subsection (1) of KRS 199.600 so far as applicable here is also quoted:

"In a proceeding involved a neglected or abandoned child, as defined in KRS 199.011, the circuit court may terminate all parental rights of the parents of such child and declare the child to be a ward of the state * * * if it is pleaded and proved in a private hearing that the par-

ents have abandoned or deserted the child, or have substantially and continuously or repeatedly refused, or being able have neglected, to give the child parental care and protection * * *."

By amended complaint, the grandparents alleged in the language of the statute, supra, that "the parents * * * have substantially and continuously or repeatedly refused, or being able have neglected, to give the infant child parental care and protection."

The circuit court declared in its "conclusions of law" that:

"The Court concludes that the plaintiffs are not entitled to the relief sought of terminating the parental rights as such because they do not belong to that class of persons set out in KRS 199.600 (1), but that they are entitled to adopt the children as they have alleged and proven pursuant to KRS 199.500(4) that *certain facts set out in KRS 199.600(1) exist with respect to the said children."* (Emphasis ours.)

 Thus, it is apparent counsel for the grandparents and the judgment of the circuit court have threaded the needle of our adoption laws. The right of adoption being purely of legislative origin, the courts will not, under our three-division system of government, disturb the legislative arrangement, unless a constitutional right is violated or it is repugnant to public policy. Adoption may be harsh and drastic in some instances where a parent is deprived of his child in violation of his sacred and enduring natural rights, but the legislature has recognized the supremacy of guardianship of the State over that of the parent.

At the time of death of the father of the Yarbrough children on December 12, 1961, they resided one mile from their Yarbrough grandparents. Shortly thereafter, the grandparents constructed a house next door to their own home and caused the mother and her six children to move into it. Before long trouble started. Appellant contends the grandparents interfered too much in her private life and she could not have "male or female" visitors. About March, 1963, the mother took her "brood" and moved to Paducah. A few weeks later, the grandparents visited appellant and the children. While there, they reported to the McCracken County probation officer (who also acts at times as county judge pro tem with jurisdiction in juvenile cases under authority of Chapter 208 of Kentucky Revised Statutes) that the children were being neglected by their mother and were in deplorable condition. The probation officer made a number of visits to the appellant's home in Paducah. On January 29, 1964, he "brought her (appellant) into county court on charges of contributing to the delinquency of minor children," and she signed a written consent relinquishing the custody of her children. Whereupon, the grandparents were awarded custody by the McCracken County Court.

Without detailing for posterity the evidence upon which the able trial judge based his judgment (set out in fifteen pages of "findings of fact and conclusions of law"), it is sufficient to say that the evidence indicates appellant visited taverns and drank some but not much; left some or all the children unattended by an older person; that she has married a man fifty-one years of age, who drank considerably, was in jail for drinking and reckless driving, but who testified he has stopped drinking entirely; Roark has a farm, which he inherited, and his estate has decreased in value about $10,000 since he inherited it; that he has not had a regular job for years, although he plans to get one in the near future.

The oldest child testified that appellant neglected, did not care for, and did not properly feed the children; that the conduct of appellant was questionable; and that he desired to live with the grandparents.

■ The trial judge found the children to be happy, contented, and well adjusted with their grandparents; that they were modest and well behaved in church, school and during the court proceedings; that their present home is in a rural section where they are encouraged in habits of thrift and agricultural pursuits (perhaps one of the most gratifying activities of man); and that some of them have bank accounts.

We cannot say the findings of the trial judge were clearly erroneous.

Appellant raises the point that she was denied due process of law when "she was forced to surrender actual custody of the children under threat of criminal prosecution without benefit of counsel."

■ There is no pleading or proof of "force," pressure, or coercion, and there is no allegation or proof she was unable to employ counsel. Conceding she was unable to employ counsel, we do not consider her appearance before the probation officer or the county judge pro tem and the signing of a consent for custody to be such a proceeding as to require representation by counsel.

Finally, appellant contends the proceeding is void as to the stepgrandchild because he was not placed for adoption in the manner prescribed under KRS 199.470 (4) prior to the filing of complaint for adoption.

Here again we find an exception. KRS 199.470(4) provides that:

"No petition for adoption shall be filed unless prior to the filing of the petition the child sought to be adopted has been placed for adoption by a licensed child-placing institution or agency or *by the department,* or the child has been placed with written approval of the commissioner; but no such approval shall be necessary in the case of: (a) A child sought to be adopted by a step-

parent, grandparent, sister, brother, aunt or uncle; * * *." (Emphasis ours.)

■ The county court order placing the children in the custody of appellees was dated January 29, 1964. On December 2, 1964, the Child Welfare Department recommended and approved the placing of the children with the appellees. This suit was filed September 2, 1964. It is apparent, then, that the children were "placed" for adoption more than a sufficient period before the suit was filed. The only hitch is that the department did not actually do the "placing" of the children in appellees' home. The Child Welfare Department recommended and approved the placement by the county court, which amounted to a placement by the department. Such action of the department may also constitute a waiver by the department of the right to supervise the placement of children for adoption. One of the chief reasons for placing children in homes three months before filing of suit for adoption is to enable the department to study and observe the arrangement to determine whether the adoption appears feasible. The purpose of the statute was served. Furthermore, it is doubtful that KRS 199.-470 applies in proceedings pertaining to "neglected" or "abandoned" children. Subsection (1) of KRS 199.600 empowers the circuit court to terminate all parental rights of parents of neglected or abandoned children. By implication, the court may "place" the children in the custody of some person or institution at the time the parents are divested of their custody.

Jouett v. Rhorer, Ky., 339 S.W.2d 865, cited and relied on by appellant, is not a parallel or similar factual case to the one at bar. In Jouett, the child was not destitute or abandoned. It was decided in Jouett that "[b]are neglect is not sufficient statutory grounds for such a severing" of parental rights.

We are mindful of the harshness and finality of adoption proceedings in some

**920**

instances, but adoption laws have been enacted and public policy with respect to such laws clearly defined by the Legislature. Occasionally some hardships must be encountered. But, on the whole, our adoption laws are a social improvement, and they are fairly uniform.

The hardships that may appear inevitable in this case are unavoidable, but they may be minimized by humble and patient overtures on the part of the mother. Her situation is well described by her own testimony when she was asked and answered the following question:

"Q. What kind of mother have you been to the children?

"A. Up until some time ago not very good, I guess, but I mean we all make mistakes and I mean I see it now, but it's a little late."

The judgment is affirmed.