OPINION

JONES, Judge:
This case arises from a Judgment of Adoption entered by the Franklin Circuit Court granting the adoption of a minor child, B.L. (Minor Child), to Appellees J.S. and J.S. (Adoptive Parents) and the resulting termination of Appellant’s (Biological Father) parental rights with respect to Minor Child. On appeal, Biological Father asserts that the Franklin Circuit Court *63 erred by granting the adoption because he was not represented by counsel during critical stages of the underlying dependency case proceedings, the trial court failed to consider less drastic means than adoption, and because the Adoptive Parents lack the requisite statutory relationship to Minor Child for the adoption. For the reasons more fully explained below, we AFFIRM.
I.Background
Minor Child was born on December 15, 2007, to A.R. (Biological Mother) and Biological Father. Biological Mother and Biological Father lived together on and off after Minor Child’s birth. Biological Father was incarcerated several times after Minor Child’s birth.[1] He was last incarcerated on February 9, 2011, and remained in custody throughout the remainder of the time period at issue.[2]
On April 14, 2011, Biological Mother gave birth prematurely to R.J.P., Minor Child’s half-brother. After R.J.P. showed severe signs of drug withdrawal and his meconium drug screen tested positive for cocaine, methadone, and several other drugs, the Cabinet for Health and Family Services (the Cabinet) was alerted.
On April 21, 2011, the Cabinet filed a non-removal Juvenile Neglect Petition for both children. The petition listed Biological Father as the biological father of Minor Child, but only Biological Mother was listed as a person responsible for neglecting Minor Child. Biological Father was properly served with a copy of the petition in jail.
A hearing was held on April 29, 2011, wherein the Cabinet changed the non-removal petition to a removal petition. Also at that hearing, an attorney was appointed to represent Biological Mother and a guardian ad litem (Guardian) was appointed for the children. Biological Father, who was still incarcerated, was not present or represented by counsel. During the hearing, Biological Mother stipulated to neglect and both children were temporarily placed with Biological Father’s mother (Minor Child’s paternal grandmother), who agreed only to keep the children for a short time. Accordingly, the Cabinet had to secure another placement for the children. The Cabinet placed the children with the Adoptive Parents in June of 2011.[3]
The trial court conducted a disposition hearing on July 22, 2011. Biological Father was again not present or represented by counsel. During that hearing, the trial court committed Minor Child to the Cabinet’s custody and directed him to remain with the Adoptive Parents until further order of the trial court. The trial court also adopted a reunification plan for Biological Mother.
The trial court conducted two additional hearings on October 21, 2011, and January 6, 2012. During those hearings, it was revealed that Biological Mother was not working on her case plan for reunification with the children and both the Guardian and the Cabinet recommended that the Adoptive Parents receive permanent relative custody of the children. Biological Father was not present or represented by counsel at either hearing. Biological Father did not have any interaction with the *64 Cabinet and did not have a case plan. The trial court granted the Adoptive Parents “permanent relative placement” of Minor Child on January 6, 2012.
The Adoptive Parents filed a Motion to Intervene in the neglect case and a Motion for Permanent Relative Custody of Minor Child on May 11, 2012. Biological Father responded to the motions. He asked to be transported to the hearing and to be appointed a guardian or attorney to assist him. Biological Father was transported to the hearing, which the trial court conducted on June 22, 2012. At the hearing, the trial court questioned Biological Father regarding whether he objected to the Adoptive Parents’ request for custody of Minor Child. The trial court denied Biological Father’s motion for counsel because it determined that there were no contested issues. The trial court then found that the Adoptive Parents qualified as de facto custodians and that it was in Minor Child’s best interests to remain in their home. The trial court awarded sole custody of Minor Child to the Adoptive Parents.
Shortly thereafter, on July 23, 2012, the Adoptive Parents filed a Petition to Adopt Minor Child pursuant to KRS Chapter 199, et seq. Biological Father was properly served with a copy of the petition. The trial court appointed Biological Father a guardian to represent his interests in the adoption proceedings due to his continued incarceration. Biological Father filed a pro se response objecting to the adoption and his guardian filed another response objecting to the adoption on his behalf. Biological Father’s guardian was then released from his duties and the trial court appointed an attorney for Biological Father. Minor Child’s Guardian and the Cabinet issued reports recommending that the adoption be granted.
Biological Father filed a motion to dismiss the adoption petition on December 28, 2012, alleging that the petition must be dismissed because he was not represented by counsel during the prior neglect proceedings. After oral argument, the trial court denied Biological Father’s motion to dismiss, noting that Biological Father was not named in the neglect petition. The trial court specifically found that “considering the fact that [Biological Father] was incarcerated during the entirety of the neglect case, and continues to be incarcerated, without the ability to take custody of, or care for [Minor Child], the trial court does not believe that the proceedings in the neglect case have any effect on the adoption petition that [Biological Father] seeks to dismiss.”
A final hearing on the adoption petition was held on February 11, 2013. Biological Father was present and represented by counsel. Biological Father testified at length during the hearing. Biological Father testified that he was aware of Biological Mother’s drug use while caring for Minor Child; that he had previously used drugs while caring for Minor Child; that he had been incarcerated at least three of the five years of Minor Child’s life; that he would be eligible for parole in March 2013 but he had no expectation that he would be granted parole; that he did not have employment lined up when he was released from prison; that he would likely have to live in a halfway house upon release; and that he had not participated in any medical or education choices for Minor Child. Biological Father also testified that he planned to pursue custody of Minor Child after his release from prison; that he had sent cards to Minor Child; that his mother had been in contact with Minor Child and sent him gifts; and that he had provided some supplies for Minor Child, such as diapers, on occasion prior to his incarceration. Biological Mother did not present any evidence.
*65 The Adoptive Parents also testified and presented testimony from the Cabinet. At the close of the hearing, Biological Father requested a directed verdict, alleging that the Adoptive Parents lacked the requisite familial relationship to adopt Minor Child under KRS 199.470(4). The trial court took the matter under advisement and the Adoptive Parents filed a written response. The trial court eventually denied the motion for directed verdict and issued a Judgment of Adoption on March 21, 2013. It is from that Judgment that Biological Father appeals.
II. Standard of Review
The proceedings in the adoption case were primarily pursuant to KRS 199.500 and KRS 199.502, adoption without the consent of the biological parents. An adoption without the consent of a living biological parent is, in effect, a proceeding to terminate that parent’s parental rights. Moore v. Asente, 110 S.W.3d 336 (Ky.2003). The standard of review in a termination of parental rights action is confined to the clearly erroneous standard in CR 52.01 based upon clear and convincing evidence. The findings of the trial court will not be disturbed unless there exists no substantial evidence in the record to support its findings. Clear and convincing proof does not necessarily mean uncontra-dicted proof. It is sufficient if there is proof of a probative and substantial nature carrying the weight of evidence sufficient to convince ordinarily prudent-minded people. M.P.S. v. Cabinet for Human Resources, 979 S.W.2d 114, 116-17 (Ky.App.1998). Additionally, since adoption is a statutory right which severs forever the parental relationship, Kentucky courts have required strict compliance with the procedures provided in order to protect the rights of the natural parents. See Day v. Day, 937 S.W.2d 717 (Ky.1997).
We are also reminded of the protected rights of parents to raise their own children. As the Supreme Court summarized in Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), the rights to conceive and to raise one’s children have been deemed “essential,” Meyer v. Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), basic civil rights of man, Skinner v. Oklahoma ex rel. Williamson, 316 U.S. 535, 541, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942), and rights far more precious than property rights, May v. Anderson, 345 U.S. 528, 533, 73 S.Ct. 840, 97 L.Ed. 1221 (1953). “It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.” Prince v. Massachusetts, 321 U.S. 158, 166, 64 S.Ct. 438, 88 L.Ed. 645 (1944). Furthermore, “[t]he fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State.” Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).
III. Analysis
A Father’s Representation During Neglect Proceedings
Biological Father argues that the Petition of Adoption should have been dismissed due to the trial court’s failure to appoint counsel to represent him at all critical stages of the underlying neglect case against Biological Mother. Biological Father specifically states that during the neglect proceedings, the trial court failed to conform to the rules set forth in KRS 620.100(l)(b), which state: “[t]he court shall appoint separate counsel for the parent who exercises custodial control or su *66 pervision if the parent is unable to afford counsel pursuant to KRS Chapter 31.”[4] As discussed above, Biological Father was not represented by counsel at any of the proceedings in regards to the neglect case. Biological Father did request counsel during the hearing on permanent relative placement, but the trial court denied that request upon learning that Biological Father did not object to the Adoptive Parents being granted full custody of Minor Child.
This court previously held in R.V. v. Com., Dept. for Health and Family Services, 242 S.W.3d 669, 673 (Ky.App.2007) that “the parental rights of a child may not be terminated unless that parent has been represented by counsel at every critical stage of the proceedings. This includes all critical stages of an underlying dependency proceeding in district court, unless it can be shown that such proceeding had no effect on the subsequent circuit court termination case.” Biological Father asserts that his due process rights were violated during the adoption proceedings because he was not appointed counsel during the neglect proceedings. Biological Father further argues that the neglect proceedings had a substantial effect on the adoption proceedings.
Keeping in mind that these standards apply to a parent whose custodial rights are terminated through an adoption, it is our view that Biological Father was not entitled to representation during the neglect proceedings. Biological Father was not accused of neglecting Minor Child and was not otherwise the subject of the neglect proceedings. Biological Father was also not involved with the Cabinet and did not have to take any steps for reunification, unlike Biological Mother. Most importantly, Biological Father was not the parent exercising custodial control or supervision of Minor Child during the time of the alleged neglect or at any time during the neglect proceedings. There is also no evidence in the record that Biological Father was involved in any capacity with Minor Child’s care during the relevant times.
While the statute does not give an exact definition of “custodial control or supervision,” it is our view that Biological Father, who was not only incarcerated, but also uninvolved with Minor Child for most of his life and at all times relevant for the neglect proceedings, does not qualify as such. A plain reading of KRS 620.100 supports our view that the statute was intended to protect the rights of the parent involved in a dependency, neglect, or abuse case. Furthermore, the clear concern in R.V. v. Commonwealth, Dept, for Health and Family Services is the protection of a parent involved in such a case when those proceedings may later impact that parent’s involuntary termination of parental rights. This court has previously upheld terminations of parental rights when a parent did not have counsel for an underlying abuse, dependency, or neglect case when the complaining parent was not the parent exercising custodial control or supervision or otherwise involved in the underlying case. See R.V. v. Cabinet for Health and Family Services, No. 2013-CA-000175-ME, 2013 WL 4781523 (Ky.App. September 6, 2013); B.H. v. Cabinet for Health and Family Services, No. 2010-CA-000664-ME, 2010 WL 4905641(Ky.App. December 3, 2010). Therefore, we conclude that the trial court was not required to appoint counsel for Biological Father during the neglect proceedings and there was no error mandating reversal of the adoption based on this issue.
Additionally, the record does not support Biological Father’s contention that his *67 lack of counsel during the neglect case had a substantial impact on the adoption proceedings. Biological Father testified at length during the adoption hearing regarding his ability to parent and support Minor Child and his history of drug use. The trial court relied only on evidence from the adoption proceeding as related to Biological Father. Moreover, while Biological Father alleges that he did not fully understand the neglect proceedings because he was not represented by counsel during them, Biological Father’s understanding of the neglect proceedings is not relevant with respect to Biological Father’s termination proceeding. Indeed, an adoption under KRS 199.502, the statute used to grant the Adoptive Parents’ adoption of Minor Child, does not require a prior finding by a court that the child had been neglected or abused.

B. Consideration of Less Drastic Measures Than Adoption

Father’s second assignment of error is that the Franklin Circuit Court erred as a matter of law by failing to consider any measure less drastic than adoption in determining Minor Child’s best interests. We disagree. Biological Father argues that the trial court erred by not following the standard set forth in D.S. v. F.A.H., 684 S.W.2d 320, 323 (Ky.App. 1985), which stated that it is “incumbent upon the court when considering a petition to adopt pursuant to K.R.S. 199.500(4) to not only require clear and convincing evidence of abandonment or neglect, but to also consider any less drastic measures to accomplish the child’s best interest.”
In relevant part, KRS 199.500(4) provides that “an adoption may be granted without the consent of the biological living parents of a child if it is pleaded and proved as a part of the adoption proceedings that any of the provisions of KRS 625.090 exist with respect to the child.” KRS 625.090 is the current statute listing the factors that a court must consider when determining if a termination of parental rights is appropriate. However, D.S. was decided pursuant to the old statute for termination of parental rights, KRS 199.603, which was repealed in 1987. The current statute and its corresponding case law contain no requirement that a court consider means less drastic than adoption prior to a judgment of adoption. This court previously declined to carry over the requirements of the repealed KRS 199.603 into the current adoption-law requirements. See R.L.F., Jr. v. Cabinet for Health and Family Services, No. 2011-CA-001640-ME, 2012 WL 1886956 at *5 (KyApp. May 25, 2012) (“That case was decided under prior law (KRS 199.603 and KRS 199.500), and has no bearing on the instant case.”). There is simply no requirement under our current statute that the court must consider less drastic means than adoption prior to granting an adoption pursuant to the current KRS 199.500.
In fact, KRS 199.502 requires the court only to find that one of the subsections (a) — (i) is applicable.
(1) Notwithstanding the provisions of KRS 199.500(1), an adoption may be granted without the consent of the biological living parents of a child if it is pleaded and proved as part of the adoption proceeding that any of the following conditions exist with respect to the child:
(a) That the parent has abandoned the child for a period of not less than ninety (90) days;
(b) That the parent had inflicted or allowed to be inflicted upon the child, by other than accidental means, serious physical injury;
(c) That the parent has continuously or repeatedly inflicted or allowed to be inflicted upon the child, by other than *68 accidental means, physical injury or emotional harm;
(d) That the parent has been convicted of a felony that involved the infliction of serious physical injury to a child named in the present adoption proceeding;
(e) That the parent, for a period of not less than six (6) months, has continuously or repeatedly failed or refused to provide or has been substantially incapable of providing essential parental care and protection for the child, and that there is no reasonable expectation of improvement in parental care and protection, considering the age of the child;
(f) That the parent has caused or allowed the child to be sexually abused or exploited;
(g) That the parent, for reasons other than poverty alone, has continuously or repeatedly failed to provide or is incapable of providing essential food, clothing, shelter, medical care, or education reasonably necessary and available for the child’s well-being and that there is no reasonable expectation of significant improvement in the parent’s conduct in the immediately foreseeable future, considering the age of the child;
(h) That: 1. The parent’s parental rights to another child have been involuntarily terminated; 2. The child named in the present adoption proceeding was born subsequent to or during the pen-dency of the previous termination; and 3. The condition or factor which was the basis for the previous termination finding has not been corrected; or
(i) That the parent has been convicted in a criminal proceeding of having caused or contributed to the death of another child as a result of physical or sexual abuse or neglect.
Considering Biological Father’s lengthy incarceration, his sporadic support, and his poor future employment and living arrangement prospects after release, the trial court properly found that subsections (a), (e), and (g) were satisfied in this case. Having reviewed the record, we find no error in the trial court’s determinations.
The trial court also made additional findings that Biological Father and Biological Mother “have made no efforts or adjustments in their circumstances, conduct or conditions to make it in the child’s best interest to return him to either one of them within a reasonable period of time.” Finally, the trial court also stated that “[t]he physical, emotional, and mental health of [Minor Child] and the prospects of the improvement of his welfare would be furthered by the granting of a termination of parental rights of [Biological Mother and Biological Father], and the adoption of [Minor Child] by [the Adoptive Parents].”
In conclusion, we see no error that the trial court committed in approving the adoption under KRS 199.502. The trial court was not required to consider less drastic measures. However, even so, it is apparent from the record that the trial court did balance whether there was some realistic prospect of reuniting either Biological Mother or Biological Father with Minor Child within a reasonable time-frame. The trial court concluded that given Biological Father’s and Biological Mother’s respective situations, there was no likelihood of a successful, reasonably prompt reunification with Minor Child that would be in the child’s best interests.

C. Requisite Familial Relationship

Biological Father’s final assignment of error is the circuit court erred by granting the petition for adoption because the Adoptive Parents did not have the requisite familial relationship to adopt Mi *69 nor Child pursuant to KRS 199.470. This statute states, in relevant part:
(4) No petition for adoption shall be filed unless prior to the filing of the petition the child sought to be adopted has been placed for adoption by a child-placing institution or agency, or by the cabinet, or the child has been placed with written approval of the secretary; but no approval shall be necessary in the ease of:
(a) A child sought to be adopted by a stepparent, grandparent, sister, brother, aunt, uncle, great-grandparent, great aunt, or great uncle;
Therefore, Biological Father argues that since a step great-aunt and step great-uncle are not a group of individuals specifically listed in the above statute, the Adoptive Parents should not have been permitted to file a petition for adoption and therefore the trial court erred by granting the adoption.
The Adoptive Parents were not initially prevented from filing a Petition of Adoption under KRS 199.470 because the statute specifically states that “[a]ny person who is eighteen (18) years of age and who is a resident of this state or who has resided in this state for twelve (12) months next before filing may file a petition for leave to adopt a child in the Circuit Court of the county in which the petitioner resides.” Since the Adoptive Parents meet these requirements, the question becomes whether Minor Child was properly placed with the Adoptive Parents for adoption, either through the Cabinet’s approval or through familial relationships.
It is obvious in this case that Minor Child was placed with the Adoptive Parents by the Cabinet. However, Minor Child was placed for temporary and later permanent relative custody by the Cabinet. The Cabinet did not place Minor Child for adoption. It was not until after the adoption petition was filed that the Cabinet issued a report recommending the adoption. The language of the statute makes it clear that placement for adoption must occur prior to the filing of the petition. This intention was affirmed in Commonwealth, Dept. of Child Welfare v. Jarboe, 464 S.W.2d 287, 291 (Ky.1971), which found that “[KRS 199.470] requires that before the child can be adopted [he] must have been placed in the home for the purpose of adoption.” Therefore, the Adoptive Parents must qualify as a relative under the statute in order to adopt. The trial court found that the Adoptive Parents did qualify as relatives under KRS 199.470 because they are Minor Child’s great-aunt and great-uncle, a category of relative specifically listed in the statute, despite the fact they are related only by marriage.
Though the statute does list specific persons who may adopt as relatives, it does not mandate that those persons be blood relatives and there are no other applicable statutes defining relatives for purposes of adoption as only blood relatives.[5] Additionally, this court previously upheld an adoption wherein the adoptive parent was a step-relative of the child. In Roark v. Yarbrough, 411 S.W.2d 916 (Ky.1966), step-grandparents were permitted to adopt their step-grandson pursuant to KRS 199.470.[6]
*70 Also persuasive is the fact that relatives related only by marriage are consistently considered “relatives” for purposes of child placement in other contexts. The Cabinet for Health and Family Services’ Standard Operating Procedures Manual specifically lists “a relative by marriage of [a child’s blood relative] even if the marriage has ended” as a relative for purposes of kinship care. Cabinet Standard Operating Procedures, Chapter 4.3. An administrative agency’s interpretation of its own regulations is entitled to substantial deference. Com., Cabinet for Health Services v. Family Home Health Care, Inc., 98 S.W.3d 524, 527 (Ky.App.2003) (quoting Camera Center, Inc. v. Revenue Cabinet, 34 S.W.3d 39 (Ky.2000)). It was under this interpretation of the regulation that the Adoptive Parents, relatives by marriage to Biological Mother, were considered to be relatives for placement by the Cabinet.
It is our view in the absence of an express requirement that the relatives listed in KRS 199.470(4)(a) be blood relatives of the child, there is no error in allowing a great-aunt and great-uncle related by marriage to file a petition to adopt without placement for adoption by the Cabinet. Therefore, we find no reversible error in the trial court’s decision to grant the adoption based on KRS 199.470.
IV. Conclusion
Having reviewed each of Biological Father’s three assignments of error and finding no clear error by the circuit court, we AFFIRM the Judgment of Adoption of the Franklin Circuit Court.
ALL CONCUR.

. Father’s incarcerations were not due to any child abuse related charges.

. Father has since been paroled.

.The children’s biological maternal grandmother is Adoptive Mother’s stepsister making Adoptive Mother the step-aunt of Biological Mother and the great step-aunt of the children.

. Father was incarcerated and indigent.

. Father argues that since stepparents are specifically listed in the statute that other step-relatives were not intended to be included. Clearly stepparents must be specifically listed as a natural parent would not be filing a petition to adopt their own child. We do not believe that a specific notation for stepparents creates a rule that all other relatives listed must be blood relatives.

. The circuit court also cited to an unpublished case, G.D. v. Cabinet For Families and *70 Children, No. 2004-CA-000610-ME, 2005 WL 1125213 (Ky.App. May 13, 2005). The circuit court stated in its order denying the directed verdict that the adoptive parent in that case was a step-aunt. This is incorrect. While the child in question had been placed with a step-aunt at one time, the child was eventually placed with an unrelated foster family prior to the termination of the parent's parental rights. However, the court did properly rely on the authority from Roark and therefore we conclude that the citation to G.D. was harmless error.