RENDERED:  SEPTEMBER 27, 2024; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1474-ME

W.H.J.                                                          APPELLANT


APPEAL FROM WARREN FAMILY COURT
v.      HONORABLE CATHERINE R. HOLDERFIELD, JUDGE
ACTION NO. 21-AD-00152


J.N.W.; CABINET FOR HEALTH
AND FAMILY SERVICES,
COMMONWEALTH OF KENTUCKY;
J.A.W.; AND N.H.J., N/K/A N.H.W., A
MINOR CHILD                                                    APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ECKERLE, GOODWINE, AND McNEILL, JUDGES.

ECKERLE, JUDGE:  Appellant, W.H.J. ("Father"), seeks a second review of the

Warren Family Court's grant of the contested adoption of N.H.J. ("Child") by

Child's stepfather, J.N.W. ("Stepfather").  After careful review, we affirm.

**Factual and Procedural Background**

In 2015, Child was born to Father and J.A.W. ("Mother"). The parties divorced in 2018. The Family Court granted Mother sole custody of Child, in part due to Father's multiple, ongoing, serious problems. The Family Court ordered Father to undergo both substance abuse and mental health assessments and to attend a parenting clinic. Father failed to comply with treatment and continued to inject heroin. The Family Court then ordered Father to have no contact with Child. Father testified that during the divorce and in subsequent years, he suffered from homelessness and life-threatening addiction and turned to crime. He acknowledged guilt to felonious bail jumping in the second degree and served a probated sentence.[1] The Family Court ordered Father to pay child support, but Father failed to make regular payments for years. He has an arrearage of over $25,000. Father has never complied with the required mental health assessment. Father admitted he intentionally failed to visit his Child for many years. He did not inquire about his Child's health, welfare, or education.

In 2020, Mother and Stepfather married. In December 2021, Stepfather filed a petition to adopt Child, which the Family Court ultimately granted. Father then filed his first appeal in this case, claiming falsely that he had

---

[1] Father was also charged with assault in the second degree, but the charge was eventually dismissed.

never been advised of any right to appointed counsel. While admonishing counsel for the blatant misstatement, this Court nonetheless reversed the contested adoption due to the Family Court's *inadequate* explanation of the right of an indigent person to receive complimentary counsel. Our published Opinion contains the following pertinent background:

> [T]he family court held a brief hearing in response to Stepfather's request for a trial date, at which Father appeared *pro se*. The entire proceeding lasted approximately four minutes. At no point during those four minutes did the family court plainly tell Father that he had a statutory right to appointed counsel, if he could not afford one. *See* [Kentucky Revised Statute ("KRS")] 199.502(3) ("A biological living parent has the right to legal representation in an adoption wherein he or she does not consent. The Circuit Court shall determine if a biological living parent is indigent and, therefore, entitled to counsel pursuant KRS Chapter 31. If the Circuit Court so finds, the Circuit Court shall inform the indigent parent; and, upon request, if it appears reasonably necessary in the interest of justice, the Circuit Court shall appoint an attorney to represent the biological living parent pursuant to KRS Chapter 31 . . . .").
>
> At the hearing, when Father told the court that he intended to contest the adoption, the court asked him if he planned to get an attorney. Father replied in the affirmative and the court repeatedly told him that he needed to do so quickly. Then the court told Father: "We can give you an affidavit of indigence if you are seeking counsel. If, I don't know if, I, if you qualify for appointment of counsel or not." Obviously at least somewhat confused, Father responded, "I'll, uh, I'll pay for an attorney. Is that what you're saying?" The court simply responded, "yes." The court set the matter for trial in a few months.

> Though he said he intended to retain counsel, Father appeared *pro se* at the trial. There were no meaningful discussions at trial about Father's statutory right to receive appointed counsel if he were found to be indigent.

*W.H.J. v. J.N.W.*, 669 S.W.3d 52, 53 (Ky. App. 2023) (footnote omitted).

This Court reversed and remanded the case for a new trial because the Family Court did not make a clearer finding of the Father's lack of indigence. *Id.* We instructed the Family Court to inform Father more plainly that he was entitled to have free counsel if he requested it, filed an affidavit of indigency, and provided sufficient qualifying evidence.

On remand, the Family Court provided Father with the standardized form, entitled "Financial Statement, Affidavit of Indigence, Request for Counsel and Order" on June 14, 2023. The Family Court further explained that it would appoint counsel for Father if he qualified financially. On the form, Father indicated that his total household income was $6000/month. On June 20, 2023, given that Father admitted that he made over $70,000 per year, the Family Court denied Father's request, finding that he was not indigent under KRS Chapter 31.

On September 27, 2023, the Family Court held a hearing on Father's *pro se* motion to continue the trial, which had been scheduled for October 20, 2023. As grounds, Father claimed that he could not afford counsel. The Family Court explained again that Father was able financially to afford counsel if he chose

to do so.  The Family Court also expressed concern that a continuance would cause additional delays, noting that it had already been over 22 months since the filing of the petition for adoption.  Thus, Father had already received almost two years to find counsel.  Accordingly, the Family Court denied Father's motion to continue the trial.

The second trial took place as scheduled on October 20, 2023.  Father appeared *pro se.*  At the outset, the Family Court explained and reiterated that Father did not qualify financially for appointed counsel.  Father said that only one attorney offered to represent him, but for a price that he believed was beyond his range.  The Family Court asked whether either party had an objection to its intent to take judicial notice of the prior adoption hearing, and neither party objected.  Stepfather then asked the Family Court to take judicial notice of the divorce file, and Father did not object.

Father testified and was able to cross-examine Stepfather's other witnesses.  Father did not call any witnesses besides himself and did not enter any other evidence.  After hearing all of the evidence at the second trial (which was largely the same as it had heard during the first trial), the Family Court issued a second set of findings of fact, conclusions of law, and a judgment granting the adoption.  The Family Court specifically found that Father had deliberately abandoned his Child for more than 90 days and intentionally relinquished his

parental role and duties for more than six months. Due to the age of Child, and Father's voluntary, lengthy absence in Child's life, the Family Court saw no reasonable expectation for his improvement. This second appeal followed.

**Standard of Review**

At the outset, we must note that Father has not complied with the Rules of Appellate Procedure ("RAP") in filing his brief. He failed to provide the required preservation statement. RAP 32(A)(4) mandates that an appellant's brief "shall contain at the beginning of the argument a statement with reference to the record showing whether the issue was properly reserved for review and, if so, in what manner." Without this statement, we cannot be sure whether he appropriately raised the current matters before the Trial Court. *Cotton v. NCAA*, 587 S.W.3d 356, 360 (Ky. App. 2019). Because of the protracted litigation on a straightforward issue, and the expedited nature of this appeal, we will decline to strike his brief and proceed to rule on the merits in order to achieve some finality for Child and the parties. We nonetheless caution that we are not likely to exhibit such continued patience for and excusing of Father's failures to comply with the rules and law in a forthright manner.

Father argues that the Family Court denied him due process by failing to provide him with an attorney at no cost to him. Because he did not preserve this

claim, Father requests palpable error review pursuant to Kentucky Rule of Civil

Procedure ("CR") 61.02, which provides relief under the following circumstances:

> [a] palpable error which affects the substantial rights of a party may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.

"Manifest injustice is error [that] so seriously affect[s] the fairness, integrity, or

public reputation of the proceeding as to be shocking or jurisprudentially

intolerable." *Iraola-Lovaco v. Commonwealth*, 586 S.W.3d 241, 245 (Ky. 2019)

(internal quotation marks and citations omitted).

Father also argues that there was insubstantial evidence produced at

trial to support the Family Court's findings of fact, conclusions of law, and

judgment of adoption. We review the lower court's ruling under a clear error

standard:

> An adoption without the consent of a living biological parent is, in effect, a proceeding to terminate that parent's parental rights. *Moore v. Asente*, 110 S.W.3d 336 (Ky. 2003). The standard of review in a termination of parental rights action is confined to the clearly erroneous standard in CR 52.01 based upon clear and convincing evidence. The findings of the trial court will not be disturbed unless there exists no substantial evidence in the record to support its findings. Clear and convincing proof does not necessarily mean uncontradicted proof. It is sufficient if there is proof of a probative and substantial nature carrying the weight of evidence sufficient to convince ordinarily prudent-minded people.

> *M.P.S. v. Cabinet for Human Resources*, 979 S.W.2d
> 114, 116-17 (Ky. App. 1998).

*B.L. v. J.S.*, 434 S.W.3d 61, 65 (Ky. App. 2014).

## Analysis

Father first argues that the Family Court denied him due process by declining to appoint counsel. Father finds an alleged variance for appointing counsel in proceedings for termination of parental rights but not for adoption:

> it is bizarre that counsel is afforded to parents who are facing termination of their parental rights in one kind of case (a [termination of parental rights] action brought by [the Cabinet for Health a Family Services] pursuant to KRS Chapter 625) but not in another virtually identical kind of case. This Court has yet to provide a rationale for that rule. ls this an inconsistency for the General Assembly to address? [Father] submits that the judiciary has the ability to fix the problem[.]

*See* Appellant's brief, pages 10-11.

We disagree. Both types of proceedings clearly allow for appointed counsel for indigent parties. Thus, Father's argument has no basis in the law.

For *adoption* cases, KRS 199.502(3) specifically provides for an indigent's counsel:

> [a] biological living parent has the right to legal representation in an adoption wherein he or she does not consent. The Circuit Court shall determine if a biological living parent is indigent and, therefore, entitled to counsel pursuant KRS Chapter 31. If the Circuit Court so finds, the Circuit Court shall inform the indigent parent; and, upon request, if it appears reasonably

-8-

necessary in the interest of justice, the Circuit Court shall appoint an attorney to represent the biological living parent pursuant to KRS Chapter 31[.]

Almost identically, in *termination of parental rights* cases, KRS Chapter 625 also provides free counsel to indigents:

[t]he parents have the right to legal representation in involuntary termination actions. The Circuit Court shall determine if the parent is indigent and, therefore, entitled to counsel pursuant to KRS Chapter 31. If the Circuit Court so finds, the Circuit Court shall inform the parent; and, upon request, if it appears reasonably necessary in the interest of justice, the Circuit Court shall appoint an attorney to represent the parent pursuant to KRS Chapter 31[.]

KRS 625.080(3).

A side-by-side comparison of the statutory language clearly shows that parents are appointed counsel in either adoption or termination cases *only* upon a showing of indigency and, if found indigent by a trial court, upon a request for counsel by the parent. Father's argument that a parent facing termination of parental rights pursuant to KRS Chapter 625 somehow has an easier path to appointed counsel versus a parent who does not consent to an adoption pursuant to KRS Chapter 199 is without merit. And Father's assertion that he should receive counsel irrespective of his relative financial wealth is so absurd as to justify an award of sanctions, which we will mercifully decline to impose at this point. All parents and parties to legal proceedings must establish indigence before receiving

-9-

counsel at taxpayer expense. Father has produced absolutely no evidence to the contrary to support his novel and unsupported assertions.

On remand, the Family Court followed precisely the prior instructions given by this Court. It provided Father with a standardized form to complete regarding his finances, explaining clearly that it would appoint counsel to him if he qualified. However, with an income of $6000/month, Father obviously did not qualify for free counsel, which is reserved for those who truly cannot afford attorneys. Courts are not allowed to appoint counsel arbitrarily to those who are not in need. Public resources are scarce, and those who can afford counsel on their own should be required to expend their own sufficient funds.

Here, Father indicated that his total debts amounted to $7500, with no other outstanding obligations besides his monthly child support obligation for his Child. He indicated that he owns three vehicles with a combined value of $10,000. Father also stated that there are two adults and one child living in his home. Finally, at the second adoption hearing on remand, Father conceded in his sworn testimony that he had been able to retain private counsel at his own expense for his first appeal – during which he had argued that he was too poor to obtain counsel.[2]

---

[2] We went on to explain *sua sponte* that no factual basis existed for this discord. "[W]e do not know whether Father's counsel is representing him *pro bono* or whether Father's financial status has recently improved. Given those uncertainties, we cannot conclude that his arguments about being entitled to appointed counsel are moot." *W.H.J.*, 669 S.W.3d at 57-58 (footnote omitted). However, we know now based upon the updated record before us that Father privately paid his former counsel, who did not act *pro bono*.

In the first appeal, this Court noted this incongruity "[a]cknowledg[ing] at the outset the curious dissonance between Father arguing that he was entitled to appointed counsel while he is currently being represented by non-appointed counsel." 669 S.W.3d at 57.

For all of the above reasons, upon review for manifest injustice only, we find none. Father simply and clearly was not eligible for the appointment of counsel in the adoption proceedings because he did not qualify as an indigent person.

We now turn to Father's second argument that there was insufficient evidence to support the Family Court's findings of fact, conclusions of law, and judgment of adoption. In applying the facts of the case to the applicable law, the Family Court found that the following provisions of KRS 199.502 were applicable:

> (1) Notwithstanding the provisions of KRS 199.500(1), an adoption may be granted without the consent of the biological living parents of a child if it is pleaded and proved as part of the adoption proceeding that *any of the following conditions exist* with respect to the child:
>
> > (a) That the parent has abandoned the child for a period of not less than ninety (90) days;
> >
> > . . . .
> >
> > (e) That the parent, for a period of not less than six (6) months, has continuously or repeatedly failed or refused to provide or has been substantially incapable of providing

essential parental care and protection for the child, and that there is no reasonable expectation of improvement in parental care and protection, considering the age of the child[.]

(Emphasis added.)

Turning to KRS 199.502(1)(a), the evidence presented was overwhelming that Father had voluntarily abandoned Child for a period of not less than 90 days. Father admitted that the last time that he had contact with his Child was in 2018 – over six years ago. Father points to the existence of a no-contact order in the divorce proceedings as part of the reason that he decided to avoid seeing Child. He also testified that he was advised not to attempt to make contact by his criminal defense attorney because he was facing a 15-year prison sentence. Father admitted he was homeless, addicted, and repeatedly incarcerated since 2018. Father claims he has been in a medically-assisted treatment program for at least two years and takes suboxone daily.

Yet, it is unrefuted that Father made no attempts whatsoever to see Child or be a part of Child's life from early 2018 until July 2022 (*i.e.*, after the petition for adoption was filed). Father filed a defective motion for visitation in the divorce action, but made no other attempts to reinstate his visitation or have the no-contact order lifted at any time. Further, the Family Court's findings of fact state that the no-contact order pertained only to Child, not Mother, and Father admitted

that he never attempted to contact Mother regarding Child.[3]  Father failed to pay child support consistently until November 2021, just one month prior to the filing of the adoption petition, and he had accumulated over $25,000 in arrearages at the time of the final hearing.  "[A]bandonment is demonstrated by facts or circumstances that evidence a settled purpose to forgo all parental duties and relinquish all parental claims to the child." *M.S.S. v. J.E.B.*, 638 S.W.3d 354, 365-66 (Ky. 2022) (internal quotation marks and footnote omitted).  Father had zero involvement in Child's life for over five years and did not seek any contact until Court proceedings were initiated to stop him from doing so in the future.  The unrefuted evidence that he abandoned child for a period of not less than 90 days was prodigious.

Although the Family Court needed to find only one applicable factor under KRS 199.502, it also found that subsection (e) was applicable.  Again, the evidence that Father had "continuously or repeatedly failed or refused to provide or has been substantially incapable of providing essential parental care and protection for [Child], and that there is no reasonable expectation of improvement in parental care and protection, considering the age of [Child]" was vast.  At the time of the

---

[3] The no-contact order does not appear in the record before us.  "When the record is incomplete, this Court must assume that the omitted record supports the trial court." *Chestnut v. Commonwealth*, 250 S.W.3d 288, 303 (Ky. 2008) (citation omitted).

-13-

final hearing, Child was eight years old and had received no contact from Father since prior to his third birthday. Stepfather is the only father this young Child has ever known.

Father also takes issue throughout his brief with the Family Court's findings that he had not (1) had a substance abuse or mental health assessment; (2) attended a parenting class; and (3) attended inpatient or outpatient treatment. These arguments are red herrings to distract from Father's abandonment of Child. They are also unsupported as Father did not submit evidence of parental classes or substance abuse treatment. His treatment records were conflicting, and the Family Court was in the best position to judge Father's credibility, especially in light of his continuing, long-term drug use.[4] While we hope Father's involvement in some treatment and any commitment to sobriety at this point in his life, his more recent actions cannot undo the complete lack of involvement, and attempts at involvement, in Child's life since 2018.

## Conclusion

For the foregoing reasons, the findings of fact, conclusions of law, and judgment of the Warren Family Court are affirmed.

ALL CONCUR.

---

[4] Father first testified that he had not attended treatment. He later swore to the opposite, that he attended a 30-day inpatient treatment program when Child was approximately one year old. Nonetheless, he continued to use unlawful substances after he left the program.

BRIEFS FOR APPELLANT:  BRIEF FOR APPELLEES:

Allison Spencer Russell  Casey A. Hixson
Louisville, Kentucky   Bowling Green, Kentucky