RENDERED: JUNE 18, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0437-ME

H.M. APPELLANT

APPEAL FROM LARUE CIRCUIT COURT
v.     HONORABLE JOSEPH GUINAN BALLARD, JUDGE
ACTION NO. 24-AD-00014

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES; E.J.M., A
MINOR CHILD; J.M.M., SR.; AND
K.L.M. APPELLEES

AND

NO. 2025-CA-0439-ME

H.M. APPELLANT

APPEAL FROM LARUE CIRCUIT COURT
v.     HONORABLE JOSEPH GUINAN BALLARD, JUDGE
ACTION NO. 24-AD-00012

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES; J.M.M., SR.;

K.L.M.; AND W.M.M., A MINOR
CHILD                                                                          APPELLEES

OPINION
AFFIRMING

\*\* \*\* \*\* \*\* \*\*

BEFORE:  ACREE, CALDWELL, AND CETRULO, JUDGES.

ACREE, JUDGE:  Appellant H.M. (Mother), challenges the Larue Circuit Court's February 7, 2025 Findings of Fact and Conclusions of Law and Judgments of Adoption which terminated her parental rights to Appellees, E.J.M. and W.M.M. (the Children).  After a careful consideration of the briefs, relevant law, and the record on appeal, the Court affirms.

## BACKGROUND

In early 2023, Appellee the Cabinet for Health and Family Services (the Cabinet), filed dependency, neglect, and abuse (DNA) petitions against Mother and Father.[1]  The basis of the petition stemmed from Father's claims of domestic violence acts made by Mother and the Cabinet's concerns that parents had substance abuse issues.  At the temporary removal hearing, Mother had a hair follicle screen which tested positive for amphetamines and methamphetamines, and the Larue District Court placed the Children into the temporary custody of the

---

[1] Father passed away in August 2024 before the filing of the underlying adoption actions.

-2-

paternal grandparents, Appellees J.M.M. and K.L.M. (Grandparents). Both parents later stipulated to neglect, and the Cabinet provided Mother with a case plan, which included the directions for Mother to complete a substance abuse assessment and follow recommendations; complete a mental health assessment and follow recommendations; complete parenting classes; complete anger management and domestic violence classes; and randomly drug screen.

Problems arose early in the DNA matter when Mother attempted to use someone else's urine for her drug screens. Eventually, the district court ordered Mother to attend an inpatient treatment program as part of her case plan in May 2023. In the latter half of 2023, the district court also prohibited contact between Grandparents and Mother and discontinued Mother's visitations with the Children due to continuing concerns with her substance abuse and disruptive behaviors during visits. Notably, Mother was still permitted to send letters and Christmas presents to the Children. Over the following months, Mother struggled to make substantial progress on her case plan. While she completed parenting and anger management classes, Mother continued to provide some positive drug screens and failed to complete any treatment program for her substance abuse issues. Though she enrolled in a few substance abuse treatment programs, she was discharged for non-compliance or left early of her own volition from each. In January 2024 Mother accrued criminal charges concerning the possession of illicit

substances and was placed on pre-trial diversion.[2]  In February 2024, the district court waived reasonable efforts from the Cabinet regarding Mother's services,[3] granted permanent custody of the Children to Grandparents, and closed the DNA action.

Grandparents filed their petitions for adoption with the Larue Circuit Court in August 2024.  Mother filed an answer along with a request for visitation, claiming Grandparents were denying her requests for such.  The circuit court conducted a final adoption hearing in early January 2025, during which a Cabinet worker, Grandparents, and Mother testified.

In the course of Mother's testimony, she claimed she had been sober since April 2024 and was currently enrolled in an intensive outpatient program (IOP) through requirements of her probation and parole.  She explained she had initially violated her pre-trial diversion involving the criminal charges she sustained in February 2024 by not going into IOP then, and she sustained additional charges in November 2024, which included possession of marijuana,

---

[2] To maintain confidentiality of the parties, the Court will not list the case numbers of such publicly accessible files.  Information about the existence of charges may be referenced by an appellate court to provide prospective for the trial court proceedings.  *See, e.g.*, *Mulazim v. Commonwealth*, 600 S.W.3d 183, 203 n.6 (Ky. 2020).

[3] Reasonable efforts are defined as "the exercise of ordinary diligence and care by the department to utilize all preventive and reunification services available to the community in accordance with the state plan for Public Law 96-272 which are necessary to enable the child to safely live at home[.]"  Kentucky Revised Statutes (KRS) 620.020(13).

possession of drug paraphernalia, and careless driving.[4]  Regarding her housing and employment, Mother was living in a home owned by her father and was earning approximately $100 a week doing odd cleaning jobs.

The circuit court did not address Mother's pending motion for visitation at the hearing, determining that the motion would be moot if it concluded the adoption should occur.  On February 7, 2025, the circuit court issued its Findings of Fact and Conclusions of Law and Judgments of Adoption.  Mother filed a motion requesting a new trial on the basis that her pending motion for visitation was not addressed; the circuit court denied the motion and also explicitly denied Mother's motion for visitation.  This appeal followed.

STANDARD OF REVIEW

The same standard of review is used in both an adoption without the consent of the biological parents and an involuntary termination of parental rights matter.  *See Moore v. Asente*, 110 S.W.3d 336, 351 (Ky. 2003).  A judgment which terminates parental rights to a child shall only be reversed by this Court if it is clearly erroneous; in other words, there is no substantial, clear, and convincing evidence to support the lower court's decision.  *See B.L. v. J.S.*, 434 S.W.3d 61, 65 (Ky. App. 2014); *see also* Kentucky Civil Rules of Procedure (CR) 52.01.

---

[4] Those charges were still pending at the time of the adoption hearing, though as the Cabinet mentions in its brief, Mother has since pleaded guilty to those charges.

"Pursuant to this standard, an appellate court is obligated to give a great deal of deference to the family court's findings and should not interfere with those findings unless the record is devoid of substantial evidence to support them. Due to the fact that termination decisions are so factually sensitive, appellate courts are generally loath[] to reverse them, regardless of the outcome." *Cabinet for Health & Fam. Servs. v. K.H.*, 423 S.W.3d 204, 211 (Ky. 2014) (internal quotation marks and citations omitted).

## ANALYSIS

In contested adoptions, there are four distinct considerations which must be contemplated by a circuit court in considering whether to grant the adoption. Those are:

> (1) [D]id the petitioner comply with the jurisdictional requirements for adoption; (2) have any of the conditions outlined in KRS 199.502(1) been established; (3) is the petitioner of good moral character, of reputable standing in the community and of ability to properly maintain and educate the child as required by the first portion of KRS 199.520(1); and (4) finally, will the best interest of the child be promoted by the adoption, and is the child suitable for adoption as required by the final portion of KRS 199.520(1).

*A.K.H. v. J.D.C.*, 619 S.W.3d 425, 431 (Ky. App. 2021) (footnote omitted). In the case at hand, Mother challenges the sufficiency of the circuit court's findings relating to the conditions outlined in KRS 199.502(1) and the finding concerning the Children's best interests. The Court takes these arguments in turn.

-6-

*Sub judice*, the circuit court found multiple conditions of KRS 199.502(1) to exist, though it needed to only have found the existence of one. *See C.J. v. M.S.*, 572 S.W.3d 492, 496 (Ky. App. 2019). For its purposes, the Court shall specifically examine the findings regarding KRS 199.502(1)(e).[5]

Specifically, the circuit court found Mother failed to provide essential parental care and protection since February 2023 and there was no reasonable expectation of improvement for Mother's circumstances. It further found Mother had significant substance abuse issues and positive drug screens through the pendency of the DNA case; she failed to complete any meaningful substance abuse treatment program, inpatient or otherwise; she attempted to cheat drug screens; and she continued to deny having a substance abuse problem. The circuit court additionally found that Mother did not have stable housing or employment, and

---

[5] In relevant part, KRS 199.502(1) provides:

> [A]n adoption may be granted without the consent of the biological living parents of a child if it is pleaded and proved as part of the adoption proceeding that any of the following conditions exist with respect to the child;
>
> . . . .
>
> (e) That the parent, for a period of not less than six (6) months, has continuously or repeatedly failed or refused to provide or has been substantially incapable of providing essential parental care and protection for the child and that there is no reasonable expectation of improvement in parental care and protection, considering the age of the child[.]

that she continues to engage in drug-related criminal activities which demonstrate an ongoing pattern of behavior incompatible with responsible parenting.

On the other hand, Mother's only evidence she had adequately addressed her substance abuse issues was her testimony. She provided no evidence of clean drug screens, and when asked what prompted her to address her substance abuse issues, she stated she was pregnant with another child and, while she still had problems, they were simply not drug-related. She did not elaborate on what those issues were or how she was addressing those issues. Mother additionally did not provide any elucidation regarding her pending criminal charges concerning possession of marijuana and drug paraphernalia other than her statement that it was not hers. Also, while Mother sent some presents to the Children, she had not attempted to initiate child support proceedings or provide any other form of support. And other than her income from odd cleaning jobs, Mother provided no plan or other evidence that she would be able to provide for the Children, though she thought she would be able to do so. Demonstrably, there is clear and convincing evidence which supports the necessary finding under KRS 199.502(1).

Regarding the Children's best interests, Mother argues that the circuit court failed to look holistically at all of the evidence and appears to have relied too heavily on its findings made under KRS 199.502(1); she instead suggests the circuit court should have engaged with the best interest factors contained in KRS

625.090(3). While the Court agrees with Mother in that the circuit court is required to look holistically at all of the evidence, we do not reach her conclusion that the circuit court failed to do so, nor was it required to engage with the best interest factors contained in KRS 625.090(3) to the extent she maintains.

"Best interests" regarding children is not an explicitly defined term within our jurisprudence; therefore, the determination is left to the sound discretion of the lower court. *Pennington v. Marcum*, 266 S.W.3d 759, 769 (Ky. 2008). Some statutes provide a non-exhaustive list of factors for the courts to consider, to assist in a best interest determination. *See, e.g.*, KRS 403.270(2) (providing a list of factors for lower courts to consider in determining custody in civil domestic relations cases).

KRS 625.090 specifically provides a list of best interest factors for the circuit court to consider in involuntary termination of parental rights actions.[6] As

---

[6] KRS 625.090 providing in relevant part:

(3) In determining the best interest of the child and the existence of a ground for termination, the Circuit Court shall consider the following factors:

(a) Mental illness as defined by KRS 202A.011(9), or an intellectual disability as defined by KRS 202B.010(9) of the parent as certified by a qualified mental health professional, or a disability as defined in KRS 199.011, if the mental illness, intellectual disability, or disability renders the parent consistently unable to care for the immediate and ongoing physical or psychological needs of the child for extended periods of time;

(b) Acts of abuse or neglect as defined in KRS 600.020(1) toward any child in the family;

can be surmised, the statutes governing involuntary termination of parental rights proceedings in KRS Chapter 625 and adoption proceedings without the consent of parents in KRS Chapter 199 are exceedingly similar.[7] However, while KRS 625.090(3) provides a list of specific best interest factors to consider, there is no equivalent list in KRS Chapter 199. KRS 199.520(1) merely provides that an adoption shall require a finding "that the best interest of the child will be promoted by the adoption and that the child is suitable for adoption." This said, the courts have recognized the difference but have occasionally utilized the best interest factors contained within KRS 625.090(3) in assisting with its determination of a child's best interests in a contested adoption. *See, e.g.*, *E.L.C. v. L.W.H.*, No. 2023-CA-0052-ME, 2023 WL 6165331, at *4 (Ky. App. Sep. 22, 2023).[8]

---

. . .

> (d) The efforts and adjustments the parent has made in his or her circumstances, conduct, or conditions to make it in the child's best interest to return the child to his or her home within a reasonable period of time, considering the age of the child;
>
> (e) The physical, emotional, and mental health of the child and the prospects for the improvement of the child's welfare if termination is ordered; and
>
> (f) The payment or the failure to pay a reasonable portion of substitute physical care and maintenance if financially able to do so.

[7] *Compare, e.g.*, KRS 199.502(1) and KRS 625.090(2) (The grounds for parental unfitness are nearly identical.).

[8] We cite this case for its illustrative value and not as authority. Kentucky Rules of Appellate Procedure (RAP) 41(A).

*Sub judice*, the circuit court did not explicitly engage with the factors contained in KRS 625.090(3). While topically relevant to the matter at hand, those factors were not statutorily mandated, so the circuit court need not have ultimately engaged with them. Moreover, even if they were applicable, it is clear from our jurisprudence that trial courts need only consider statutory best interest factors; explicit findings regarding every applicable factor are not always necessary. *See D.G.R. v. Cabinet for Health & Fam. Servs.*, 364 S.W.3d 106, 115 (Ky. 2012); *see also Cabinet for Health & Fam. Servs. v. K.H.*, 423 S.W.3d 204, 212 (Ky. 2014).

The record on appeal in this case is replete with instances of Mother's substance abuse issues. These issues are an important element inexorably intertwined with the Children's best interests, so a focus on the parental unfitness factors of KRS 199.502(1) is reasonably expected to overlap with a consideration of the Children's best interests. *See A.F. v. L.B.*, 572 S.W.3d 64, 76 (Ky. App. 2019). It is also uncontested that Mother neglected the Children and there was a finding of the same. Additionally, it is clear the circuit court considered the well-being of the Children themselves and their relationship with Grandparents – it heard testimony from the Cabinet regarding the Children; sought advice from the Children's guardian *ad litem*, who recommended the adoption occur; and even directly asked Grandparents about the welfare of the Children and their advances in school, and asked for Mother's personal thoughts on sobriety and her plans for

the future. Contrary to what Mother purports, from this Court's review of the record, there is nothing to suggest the circuit court failed to diligently consider the Children's best interests nor did it fail to holistically consider all the evidence before it.

## CONCLUSION

Accordingly, the Court observes no clear error and affirms the Larue Circuit Court's February 7, 2025 Findings of Fact, Conclusions of Law, and Orders of Judgments of Adoption.

ALL CONCUR.

| BRIEFS FOR APPELLANT: | BRIEF FOR APPELLEES J.M.M. AND K.L.M.: |
|---|---|
| Hollyn Richardson<br>Louisville, Kentucky | Lee Cassie Yates Clagett<br>Elizabethtown, Kentucky |