v.

**C.M.C., JR. and R, a minor, a/k/a
R, a minor, Appellees.**

**No. 2009–CA–000189–ME.**

Court of Appeals of Kentucky.

Aug. 21, 2009.

Rehearing Denied Sept. 29, 2009.

Discretionary Review Denied by
Supreme Court Dec. 10, 2009.

Jeffery W. Helton, Pineville, KY, for
appellant.

J.P. Cline III, Middlesboro, KY, for appellees.

Before COMBS, Chief Judge;
VANMETER, Judge; LAMBERT,[1]
Senior Judge.

*OPINION*

COMBS, Chief Judge.

P.C.C. (P) appeals from a judgment of
adoption of the Bell Circuit Court effectively terminating his parental rights and
allowing his son's stepfather to adopt him.
The evidence before the court did not establish clearly and convincingly that P willfully abandoned his son. Therefore, we
vacate the judgment.

P was married to K.R.C. (K) on two
occasions. A son, R.C.C. (R), was born on
June 17, 2002, during their second marriage. This marriage was terminated soon
after the child's first birthday. During the

---

1. Senior Judge Joseph E. Lambert sitting as
Special Judge by assignment of the Chief Jus-
tice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

course of the dissolution of their marriage, P and K reached an agreement with respect to R's care and support. K was to be R's sole custodian, and P was to have visitation with his son each Wednesday, each Christmas Day, each Father's Day, and on alternating Thanksgiving and Easter holidays. P was entitled to visit more often by agreement.

On December 8, 2006, K married C.M.C (C), the appellee. On September 17, 2008, C filed a pleading with the Bell Circuit Court styled, "Petition for Adoption and Termination of Parental Rights." A copy was mailed by the circuit clerk's office to the Cabinet for Health and Family Services. P responded to the petition by contending, in part, that C (as the child's stepfather) lacked standing to initiate termination proceedings. Kentucky Revised Statute(s) (KRS) 625.050 provides that proceedings for the involuntary termination of parental rights may be initiated only by the Cabinet, an adoption agency, the county, the Commonwealth's attorney, or a parent.

P also filed a motion in the dissolution proceedings to enforce his visitation rights—separate and apart from his response in the proceeding for adoption/termination of parental rights. During a hearing on the adoption in October 2008, the circuit court declined to consider P's motion filed in the context of the dissolution action. In response to a statement by P's counsel, the court also refused to hear evidence indicating that P had been denied visitation with his son for years, admonishing counsel that he was "getting the cart before the horse." The court announced that resolution of the petition for adoption and termination of parental rights would precede any consideration of the visitation issue. The court advised that P could set his motion addressing the visitation issue later by filing a motion for an evidentiary hearing **if and only if** the adoption petition was ultimately denied.

Trial on the petition for adoption and termination of parental rights began on October 23, 2008. After C completed his proof and announced closed, P asked the court to deny the petition. P contended that as a stepfather, C lacked standing to bring a petition to terminate the parental rights of the natural father and that C had failed to meet other critical procedural requirements. The court recessed the proceedings. On October 24, 2008, C tendered the affidavit of K in which she consented to the adoption. C also moved to file an Amended and Restated Petition for Adoption that omitted or suppressed any reference to the termination of P's parental rights.

The apparent purpose of this new filing was to allow C to invoke the provisions of KRS 199.500, which allows for an adoption **without** parental consent if a party pleads and proves that any of the provisions of KRS 625.090 exist with respect to the child. P objected, but the court permitted the documents to be filed despite his objection.

On January 6, 2009, the court's findings of fact and conclusions of law were entered. The court concluded that the proceedings were not governed by the provisions of KRS 199.500 or KRS 625.090 but instead by the provisions of KRS 199.502. Pursuant to KRS 199.502, an adoption may be granted without the consent of the biological living parent of a child if it is pleaded and proved that the parent has abandoned the child for a period of not less than ninety (90) days. The court found that C pled and proved that P had abandoned R for a period of years by failing to exercise his right to visit with the child. The court granted the petition for adoption based on the abandonment theo-

ry, thereby incidentally terminating P's parental rights.

On appeal, P contends that the trial court erred by failing to apply the correct legal standards to the proceedings and by permitting C to alter the course of the proceedings after he had announced that his case was closed. P also argues that the trial court's findings of fact cannot form the basis of a valid legal conclusion because they are not supported by substantial evidence. Since C failed to prove by clear and convincing evidence that P had abandoned R, P urges that the judgment of the trial court be vacated.

From our review of the proceedings, it is not at all clear which allegations and statutes governed this cause of action—nor how P could have discerned which cause of action he had to pursue in order to protect his parental rights. It is clear, however, that this matter has constitutional ramifications that render the statutory procedural safeguards critically important. In *Santosky v. Kramer*, 455 U.S. 745, 753–54, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), the Court observed as follows:

> The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State. Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life. If anything, persons faced with forced dissolution of their parental rights have a more critical need for procedural protections than do those resisting state intervention into ongoing family affairs. When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures.

■ In order to protect the rights of natural parents, Kentucky courts require strict compliance with statutory provisions governing the involuntary termination of parental rights. *Day v. Day*, 937 S.W.2d 717 (Ky.1997). We are persuaded that P was not afforded fundamental due process throughout the course of this litigation. In addition to the procedural pitfalls in his case compelling our decision to vacate the judgment, C also failed to meet his burden of proof that P had abandoned R.

■ C bore the burden to prove **by clear and convincing evidence** that P had abandoned R for a period of not less than 90 days. KRS 625.090(2)(a); KRS 199.502(1)(a). The evidence in this case indicates that throughout R's short life, his father's attempts to visit with him have been systematically thwarted by his mother. P described K as hostile and filled with animosity toward him. After considering the testimony, the trial court accepted this characterization. P testified that K schemed to deprive him of access to his son until he eventually began to ask other family members to keep in contact with the child and even to host birthday parties for R. K admitted that she advised P's family (including R's sister) to stay away from the child. It is undisputed that despite K's attempt to alienate P from his son, P kept current with his child support obligation and sent gifts to the boy. K admitted that she never kept P informed about any of R's extracurricular activities, and C admitted that he and K removed the child from Kentucky every Father's Day.

■ We conclude that the trial court erred as a matter of law by holding that P had abandoned R. It is true that considerable deference is accorded to the decision of a trial court to terminate a natural parent's parental rights and to grant an adoption. However, the court's findings must be supported by substantial evidence.

*Commonwealth, Cabinet for Families and Children v. G.C.W.,* 139 S.W.3d 172 (Ky. App.2004). "[A]bandonment is demonstrated by facts or circumstances that evince a settled purpose to forego all parental duties and relinquish all parental claims to the child." *O.S. v. C.F.,* 655 S.W.2d 32, 34 (Ky.App.1983). Moreover, "[s]eparation to constitute abandonment and neglect must be wilful and harsh." *Kantorowicz v. Reams,* 332 S.W.2d 269, 271–72 (Ky.1959).

The evidence presented in this case falls far short of demonstrating that P intended to forego all parental duties and to relinquish his claims to the child or that his separation was willful. The evidence does not approach—much less satisfy—the requirement that it be clear and convincing. Instead, the evidence indicates that P cares deeply about his son and that he intended to build a loving relationship with him but was consistently frustrated and prevented from doing so. The court acknowledged an attempt by C and K to **exclude** P from his son's life while simultaneously finding that P **relinquished** all parental rights and duties, willfully separating himself from the child. This inherent contradiction is untenable as a matter of law and fails to meet the evidentiary standard.

We vacate the judgment of the Bell Circuit Court in this matter with the expectation and anticipation that it will proceed to resolve the pending visitation motion within the dissolution proceeding.

ALL CONCUR.