RENDERED:  DECEMBER 6, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1239-ME

D.F.                                                                                                    APPELLANT


                        APPEAL FROM CHRISTIAN FAMILY COURT
v.                      HONORABLE KATHERINE DEMPS, JUDGE
                        ACTION NO. 22-AD-00008


M.S.; B.S.; D.J.S., A MINOR CHILD;
AND S.A.                                                                                          APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  COMBS, LAMBERT, AND McNEILL, JUDGES.

LAMBERT, JUDGE:  D.F. ("Father") appeals from a judgment of the Christian

Family Court permitting M.S. and B.S. ("Adoptive Parents") to adopt Father's

biological child, D.J.S. ("Child").  We affirm.

        Child was born in 2018.  Father and Child's mother, S.A. ("Mother"),

were not married, and Child did not reside with Father.  According to Mother,

Father had some "in and out" involvement in Child's life.  Eventually, Mother

allowed Child to reside with Adoptive Parents, who filed a petition to adopt Child. Mother agreed to allow the adoption, but Father did not. Thus, in June 2023, the Family Court held a two-day bench trial to determine whether to allow the adoption. We relate the relevant facts based upon testimony given at trial.

Child resided with Father for about two months in 2020 when Mother needed surgery. During that time, Father sent messages to Mother bluntly asking her to retrieve Child. Mother testified that Father sent her a video of himself and Child in which Child sniffs a baggie containing marijuana, and Father exclaimed "that's some 93 cuz."[1] Father also testified that he had continued to use marijuana after Child was born. But he asserted he would not now engage in such behavior. Nonetheless, Father admitted he had tested positive for THC on two drug screens near the trial date and had last smoked marijuana in May 2023. Father also admitted having an extensive criminal history but asserted he had changed his lifestyle. But at the time of trial, he had pending drug-related misdemeanor charges and a manslaughter charge.[2]

---

[1] "93" apparently is a slang term which means "[v]ery high quality marijuana, 93 is the premium 'gas' you buy at the pump." https://www.urbandictionary.com/define.php?term=93 (last visited November 12, 2024).

[2] The Family Court declined to consider the manslaughter charge but considered Father's recent misdemeanor possession of marijuana and possession of drug paraphernalia charges. Father does not challenge that decision and so we shall utilize the same approach.

Soon after retrieving Child from Father, Mother allowed Child, and another of Mother's children (who has a different father) to reside with Adoptive Parents. It is seemingly uncontested that Mother did not tell Father beforehand that Child would reside with Adoptive Parents and did not provide Father with Adoptive Parents' address. The parties dispute whether Mother provided Father with Adoptive Parents' contact information soon after Child began to reside with Adoptive Parents. Mother testified that she provided Father the phone number of one of Adoptive Parents in August 2020. Father disagreed. However, one of Adoptive Parents testified that he had seen a text Mother sent to Father that contained contact information for Adoptive Parents.

Mother sent photos to Father of Child at Adoptive Parents' home, to which (according to Mother) Father did not respond. In Mother's testimony, she stated that Father knew Child was residing with Adoptive Parents by September 2020. Father testified that he did not know Child was residing with Adoptive Parents until around February 2021. However, Father testified that he had not subsequently attempted to contact Adoptive Parents or Child.

In fact, it appears uncontested that Father has had no contact with Child since July 2020, when Mother retrieved Child from Father's residence. Father admitted in his testimony that he had not seen, or spoken to, Child since July 2020. However, Father testified that he had asked Mother to see Child after

Child left Father's care. Father also testified that he twice unsuccessfully asked Mother for Adoptive Parents' contact information after Father learned where Child was residing. Contrarily, Father also acknowledged that Mother had made attempts to allow him to speak with Child, but Father declined because he was too busy. Also, according to Mother, Father did not respond when she attempted to facilitate visitation between Father and Child.

One of Adoptive Parents testified that Father had not contacted Adoptive Parents, nor provided any support for Child, since Child had begun to live with Adoptive Parents. Mother similarly testified that Father had provided no support, such as money, food, or clothing, for Child since July 2020. Father agreed he had not done so in his testimony. Father also admitted he had not provided parental protection or care for Child since July 2020. In fact, Father responded "yes, ma'am" when Adoptive Parents' counsel asked if it was accurate that Father had given "nothing" to Child in the last three years. But Father acknowledged that he received over $1,400.00 per month in GI Bill benefits via his family.

Father testified that he had gone to the Child Support Enforcement Office in Hopkinsville, Kentucky and submitted forms to begin paying child support for Child's upkeep, ostensibly to learn Child's location. The parties do not point to evidence showing that Father has subsequently actually paid child support. When examined by Adoptive Parents' counsel, Father admitted that he had not

tried to send money for Child's support via Father's attorney, even though Child's location was stated in the petition which commenced this action.

Father filed this appeal after the Family Court granted the adoption, which necessarily also terminated Father's parental rights to Child. *See, e.g.*, *B.L. v. J.S.*, 434 S.W.3d 61, 65 (Ky. App. 2014).

Before we begin our analysis, we must resolve Adoptive Parents' request that we strike Father's brief because it is twenty-one pages long and does not contain a word count certificate. *See* Kentucky Rules of Appellate Procedure ("RAP") 31(G)(2)(a) (limiting an Appellant's opening brief to 8,750 words or twenty typewritten pages); RAP 31(G)(1) (requiring a word count certificate for a brief exceeding page limits); RAP 15(C) (redundantly requiring a word count certificate for a brief exceeding page limits); RAP 31(H) (permitting a nonconforming brief to be stricken). Given the extreme importance of ensuring that an adoption complies with Kentucky law and considering the *de minimis* nature of the violation here, we decline to sanction Father. However, we urge counsel to comply scrupulously with all appellate rules in the future as declining to impose sanctions for the submission of a noncompliant brief is a matter of judicial grace which we may not extend again. Also, we have closely examined the parties' briefs "but will discuss only the arguments and cited authorities we deem

-5-

most pertinent, the remainder being without merit, irrelevant, or redundant."

*Schell v. Young*, 640 S.W.3d 24, 29 n.1 (Ky. App. 2021).

Our Supreme Court has set forth the generally deferential standards governing our review of an adoption without consent as follows:

> Parental rights are a fundamental liberty interest protected by the Fourteenth Amendment of the United States Constitution. As such, termination of parental rights is a grave action which the courts must conduct with utmost caution. So, to pass constitutional muster, the evidence supporting termination must be clear and convincing.
>
> That said, trial courts are afforded a great deal of discretion in determining whether termination of parental rights is appropriate. A family court's termination of parental rights will be reversed only if it was clearly erroneous and not based upon clear and convincing evidence. Clear and convincing proof does not necessarily mean uncontradicted proof. It is sufficient if there is proof of a probative and substantial nature carrying the weight of evidence sufficient to convince ordinarily prudent minded people. Under this standard, we are obligated to give a great deal of deference to the family court's findings and should not interfere with those findings unless the record is devoid of substantial evidence to support them.

*M.S.S. v. J.E.B.*, 638 S.W.3d 354, 359-60 (Ky. 2022) (internal quotation marks, footnotes, and citations omitted). We also stress that "[i]t is the prerogative of the [family] court to determine the credibility of witnesses and the weight of the evidence." *R.P., Jr. v. T.A.C.*, 469 S.W.3d 425, 427-28 (Ky. App. 2015).

-6-

Adoptions without the consent of a child's biological parent(s) are governed by Kentucky Revised Statute ("KRS") 199.502, which provides in pertinent part as follows:

> (1) Notwithstanding the provisions of KRS 199.500(1), an adoption may be granted without the consent of the biological living parents of a child if it is pleaded and proved as part of the adoption proceeding that any of the following conditions exist with respect to the child:
>
>> (a) That the parent has abandoned the child for a period of not less than ninety (90) days; . . .
>>
>> (e) That the parent, for a period of not less than six (6) months, has continuously or repeatedly failed or refused to provide or has been substantially incapable of providing essential parental care and protection for the child, and that there is no reasonable expectation of improvement in parental care and protection, considering the age of the child; . . .
>>
>> (g) That the parent, for reasons other than poverty alone, has continuously or repeatedly failed to provide or is incapable of providing essential food, clothing, shelter, medical care, or education reasonably necessary and available for the child's well-being and that there is no reasonable expectation of significant improvement in the parent's conduct in the immediately foreseeable future, considering the age of the child . . . .

The Family Court found that subsections (a), (e), and (g) had each been satisfied. Father challenges all three findings. However, only one statutory factor must be satisfied for an adoption to be proper. *C.J. v. M.S.*, 572 S.W.3d 492, 496 (Ky. App. 2019). Therefore, though the main focus of the parties' briefs is on abandonment, we respectfully decline to address the many abandonment-centered arguments raised by the parties as the Family Court's alternate conclusions are amply supported by the record.

We begin with the finding that Father failed to provide parental care and protection to Child for at least six months. It is uncontested that Father has not provided *any* parental care or protection for Child since July 2020, the end of the two-month period during which Child resided with Father. Even when Child resided with Father, Father exposed Child to marijuana.

Father's response, as we construe it, is twofold. First, he contends he could not provide parental care to Child because he did not know Child's location. Second, he contends he has changed his lifestyle such that the Family Court erred by finding there was no reasonable prospect for improvement.

Father and Grandmother generally testified that they did not learn Child's location for many months after Child left Father's home. However, Mother testified to the contrary. And one of Adoptive Parents testified that he saw a text Mother sent to Father in or about August 2020 which contained contact

information for one of Adoptive Parents. The Family Court had the exclusive ability to weigh the evidence and to assess witness credibility, *R.P., Jr.*, 469 S.W.3d at 427-28, and it found Mother credible. Therefore, we must reject Father's extended arguments involving Mother's purported lack of credibility.

As such, giving conclusive weight to Mother's testimony, Father was told where Child was residing in or near August 2020, was given the phone number of one of Adoptive Parents around that time, declined to speak with Child on the telephone, and failed to respond when Mother tried to arrange visitation between Father and Child. In sum, Father has played no role in Child's life since July 2020. Thus, the Family Court's conclusion that Father willfully failed to offer parental care and protection for Child for over six months is supported by substantial evidence.

We reject Father's argument that his case resembles the factually distinguishable case of *P.C.C. v. C.M.C., Jr.*, 297 S.W.3d 590 (Ky. App. 2009). In *P.C.C.*, we held that the evidence did not support a conclusion that a father had abandoned his child because the father's efforts to remain part of the child's life had been "systematically thwarted . . . ." *Id.* at 592. First, *P.C.C.*'s focus on abandonment is inapposite to the discussion of whether Father provided parental care or support to Child. Second, in any event, there was evidence here showing that Father was given the opportunity to provide parental care, protection, and

support for Child but declined to do so. Therefore, this case is materially different than the systematic thwarting of a parent's efforts to remain a part of a child's life which occurred in *P.C.C.* Finally, unlike here, the father in *P.C.C.* "kept current with his child support obligation and sent gifts to the boy." *Id.*

We also affirm the Family Court's conclusion that there was no reasonable prospect for improvement. Father testified that he had changed his lifestyle from the time period when he incurred a lengthy criminal history and believed it was "cool" to portray himself as a drug dealer. But Father had recently had positive drug screens and new drug-related misdemeanor charges. Because it is supported by substantial evidence, we affirm the Family Court's finding that there was no reasonable prospect for improvement because Father had continued his "criminal lifestyle."

Briefly, we also affirm the Family Court's conclusion that, for reasons beyond poverty alone, Father failed to provide essential food, clothing, shelter, and the like for Child and there is no reasonable expectation of improvement. Again, for the same reasons already discussed, we must reject Father's contention that he could not provide for Child because he did not know Child's whereabouts.

Father, by his own admission, has not provided child support payments, clothing, food, health insurance or any of the necessities of life for Child since July 2020, even though Father receives $1,400.00 per month from the GI

Bill. Father did submit paperwork to incur a child support obligation, but he points to nothing showing that he has ever actually sent money to Adoptive Parents to help defray the costs inherent in childrearing. There is substantial evidence to support the Family Court's conclusion that Father failed to provide any of the necessities of life for Child for at least six months. And, for the same core reasons previously discussed, the Family Court's conclusion that there is no reasonable prospect for improvement is supported by substantial evidence.

For the foregoing reasons, the Christian Family Court is affirmed.

ALL CONCUR.

BRIEF FOR APPELLANT:

Brandi L. Jones
Oak Grove, Kentucky

BRIEF FOR APPELLEES:

Olivia Adams
Hopkinsville, Kentucky